UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HOWARD DELACRUZ-BANCROFT,

    Plaintiff,

v.       Case No. 1:23-CV-00023-JB-KK

FIELD NATION, LLC; SPARTAN
COMPUTER SERVICES/NATIONAL
SERVICE CENTER; AND
JACK IN THE BOX INC.,

    Defendants.

**DEFENDANT FIELD NATION, LLC'S MOTION TO COMPEL ARBITRATION AND TO DISMISS PLAINTIFF'S COMPLAINT**

COMES NOW, Defendant Field Nation, LLC, by and through its counsel of record, Littler Mendelson, P.C. (Jay J. Athey and Shawn Oller), and hereby submits its Motion to Compel Arbitration and to Dismiss Plaintiff's Complaint for Breach of Contract and Failure to Perform, Breach of Good Faith and Fair Dealing, Negligent and/or Intentional Misrepresentation, and Unfair Trade Practices ("Motion"), as follows:

**Certification Pursuant to Rule D.N.M.LR-Civ. 7.1(a):**

Pursuant to Rule D.N.M.LR-Civ. 7.1(a), the undersigned counsel contacted Plaintiff (*pro se*) and made multiple good faith requests for concurrence on the instant Motion. Plaintiff did not respond and Defendant assumes Plaintiff will oppose the relief requested herein.

**I.    INTRODUCTION**

Plaintiff filed his Complaint in state court, Second Judicial District, Bernalillo County, on November 14, 2022. Doc. 11-1, at 9. Plaintiff's Complaint asserts claims for Breach of

Contract, Failure to Perform; Breach of Good Faith and Fair Dealing; Negligent and/or Intentional Misrepresentation; and Unfair Trade Practices. *Id.* Defendant removed the case to the instant Court based on diversity jurisdiction. Doc. 1; Doc. 11.

Plaintiff's claims are barred from proceeding in this (or any) Court by a binding arbitration agreement between the parties that is governed by the Federal Arbitration Act ("FAA"). Under the FAA, arbitration is strongly favored. In deciding a motion to compel arbitration, the Court is limited to determining whether there is a valid agreement to arbitrate and whether Plaintiff's claims are covered by that agreement. Here, as set forth below, the Parties entered into a valid agreement to arbitrate pursuant to general contract law. Further, the Parties' agreement applies to Plaintiff's claims at issue in this matter. As such, the Court should compel the Parties to arbitration in accordance with the FAA. *See* 9 U.S.C. § 4 (a party "aggrieved" by another party's failure "to arbitrate under a written agreement for arbitration" may petition a federal court "for an order directing that such arbitration proceed in the manner provided for in such agreement").

## II.    FACTUAL BACKGROUND

Field Nation, LLC is an internet-based marketplace that allows independent technicians that Field Nation called "Providers" to connect with businesses needing services, whom Field Nation refers to as "Users." *See* Affidavit of Travis Emslander, dated March 22, 2023 and attached hereto as **Exhibit A**, at ¶ 3. Prior to accessing the Field Nation platform as a Provider, technicians such as Plaintiff agree to Terms of Use. *Id.* at ¶ 6-7. The Terms of Use include separate Provider Terms and Conditions which contain an Arbitration and Class Action Waiver relating to claims between Field Nation and the Provider. *Id.* at ¶ 10; *see also* Provider Terms and Conditions dated August 29, 2017 and attached hereto as **Exhibit B**, at § 17. Plaintiff agreed

to the Provider Terms and Conditions, including the Arbitration Agreement, before providing any services to Users through the Field Nation platform. *See* Ex. A at ¶ 9; *see* Ex. A-1.

A.  **Independent Contractor Relationship between Plaintiff and Field Nation, LLC**

By signing up on the Field Nation platform and agreeing to the Terms of Use, Plaintiff established a contractual independent contractor relationship with Field Nation. *See* Ex. B at § 1.2 ("Provider is an independent contractor who uses the Platform to offer services and to perform work on specific projects for Buyers…."); *see also* Ex. B at § 2 (Independent Contractor Relationship between Provider and Field Nation). Field Nation agreed to facilitate payment from Buyers to Plaintiff and allow access to the Field Nation platform[1] at the time Plaintiff established the relationship with Field Nation. Once a Provider such as Plaintiff has signed up by filling out the information and agreeing to the Provider Terms and Conditions, he can begin to see opportunities posted by the Users. Ex. A at ¶ 7. The Provider retains the right to accept opportunities from Users on the platform until the Agreement between Provider and Field Nation is terminated by either party. *See* Ex. B at § 14.

B.  **Arbitration Agreement between Plaintiff and Field Nation, LLC**

Plaintiff consented to submit all claims arising out of his work with Field Nation to binding arbitration. The Arbitration Agreement expressly covers Plaintiff's claims at issue in this litigation, and states in relevant part:

> **17. Arbitration Agreement and Class Action Waiver**
>
> Field Nation and Provider mutually agree to resolve any and all covered justiciable disputes between them exclusively through final and binding arbitration instead of a court or jury trial. This arbitration agreement is governed by the Federal Arbitration Act (9 U.S.C. §§ 1-16) and ***applies to any and all claims arising out of or relating to the Provider Terms,*** this arbitration agreement, the Provider's classification as an independent contractor, ***Provider's***

---

[1] Field Nation specifically reserved the right to terminate the agreement with Plaintiff and revoke access to the platform under certain circumstances. *See* Ex. B at § 14.

>***provision of services***, ***Provider's use of the Platform***, any payments made or received by Provider through the Platform or arising out of or relating to the acceptance or performance of services arranged through the Platform, ***the termination of this Agreement***, ***and all other aspects of the Provider's relationship (or the termination of its relationship) with Field Nation***, past, present or future, whether arising under federal, state or local statutory and/or common law. Provider and Field Nation agree that the mutual obligations to arbitrate disputes provide adequate consideration for this arbitration agreement.
>
>…. The arbitrator will resolve all disputes regarding the timeliness or propriety of the demand for arbitration.

See Ex. A at ¶ 10; Ex. B at § 17 (emphasis supplied). Plaintiff agreed to the Provider Terms and Conditions containing the Arbitration Agreement. *See* Ex. A at ¶ 9; Ex. A-1. Plaintiff agreed that there was adequate consideration for the arbitration agreement and Plaintiff would not have been able to access the Field Nation platform, *i.e.*, Plaintiff would not have been an independent contractor for Field Nation, without acknowledging acceptance of the arbitration agreement. *Id.* at ¶¶ 10-11.

### III.   THE FEDERAL ARBITRATION ACT MANDATES ARBITRATION OF PLAINTIFF'S CLAIMS AGAINST FIELD NATION, LLC.

The FAA was enacted to overcome courts' refusals to enforce arbitration agreements. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995). The FAA creates a general presumption in favor of arbitration and requires the enforcement of a written agreement to arbitrate. 9 U.S.C. § 2; *see also See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). The FAA not only placed arbitration agreements on equal footing with other contracts, but also established a federal policy in favor of arbitration. *Gilmer*, 500 U.S. at 24-26; *Green Tree Financial Corp.-Alabama v. Randolp*h, 531 U.S. 79, 89-90 (2001). The FAA provides that any "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

State law will only apply exclusively to an arbitration agreement if the agreement clearly opts out of the FAA and expressly states that state law applies. *See, e.g., Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63-64 (1995)(parties must explicitly state intentions within the agreement in order for the FAA to enforce same). Neither of those exceptions apply in this case. The arbitration agreement provides that it is governed by the FAA. *See* Ex. B at § 17 ("This arbitration agreement is governed by the Federal Arbitration Act…"). The arbitration agreement does not contain any kind of opt-out provision from the FAA. *See generally,* Ex. B. Nor does it contain a choice of law provision applicable to the arbitration agreement in favor of state law rather than the FAA. *Id*.

The Supreme Court has held that the term "involving commerce" is interpreted broadly, so that the FAA governs any arbitration agreement that affects commerce in any way. *See Allied-Bruce Terminix Cos.*, 513 U.S. at 270-77. Here, the FAA mandates enforcement of the arbitration agreement because the business model for Field Nation and resulting services provided to Users affect commerce. Field Nation, LLC is a Minnesota limited liability company with operations nationwide. The internet-based nature of the platform built, operated, and maintained by Field Nation necessarily dictates that it can be accessed or made available to Providers and Users in any state in which Field Nation chooses to do business. This type of business necessarily affects and involves interstate commerce as contemplated by the FAA. As the Supreme Court stated: "[n]o elaborate explanation is needed" where there is impact on the national economy and Congress' power to regulate that activity pursuant to the Commerce Clause is obvious. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 58 (2003)(holding a debt

restructuring agreement was governed by the FAA); *see Allied-Bruce Terminix Cos*., 513 U.S. at 282 (noting lack of dispute where contract between homeowner in Alabama and multistate termite control company involved interstate commerce under the FAA). As such, Field Nation's platform and the services provided by Plaintiff to Users affects commerce within the broad definition as applied to the FAA.

The FAA restricts a court's inquiry related to compelling arbitration to two threshold questions: 1) whether there is a valid agreement to arbitrate; and 2) whether the agreement covers the dispute. *See, e.g., Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 83-84 (2002)(discussing gateway issues appropriate for decision by a Court); *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 64 (2010)(challenge to validity of agreement under § 2 of FAA must be address by Court before ordering compliance with agreement under § 4 of FAA); *K.L. House Constr. CO. v. City of Albuquerque*, 1978-NMSC-025, ¶ 8 (under NMUAA, Courts only decide whether there is an agreement to arbitrate, where broad and general arbitration provision is used to define scope); *Avedon Engineering v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997)(existence of agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked).

A.  **The Parties entered into a valid agreement to arbitrate.**

In determining whether the parties have agreed to arbitrate a matter, a court should generally apply state-law principles regarding the formation of contracts. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). It is a fundamental tenet of contract law "that each party to a contract has a duty to read and familiarize himself with the contents of the contract, each party generally is presumed to know the terms of the agreement, and each is ordinarily bound thereby." *Ballard v. Chavez*, 1994-NMSC-007, ¶ 8. Under New Mexico law, a

legally enforceable contract requires the existence of an offer, an acceptance, consideration and mutual assent. *Heye v. Am. Golf. Corp.*, 2003-NMCA-138, ¶ 9. Consideration is a promise to do something that a party is under no obligation to do or to forbear from doing something it has a legal right to do. *Id.* at ¶ 12. A valid contract must be mutually obligatory, *i.e.*, both sides must provide consideration. *Id.*

The acceptance of the Provider Terms and Conditions (including the arbitration agreement) by Plaintiff constituted acceptance of an offer to form an independent contractor employment relationship with Field Nation, LLC. Both parties each provided consideration where Field Nation allowed Plaintiff access that the platform and Plaintiff voluntarily agreed to be bound by the Terms of Use, Provider Terms and Conditions, and the arbitration agreement. Further, the arbitration agreement itself imposes mutual obligations to arbitrate, thereby establishing the requisite consideration. *See* Ex. B at § 17 ("Field Nation and Provider mutually agree to resolve any and all covered justiciable disputes between them exclusively through final and binding arbitration instead of a court or jury trial."). Finally, the arbitration agreement directly addresses the requisite consideration. *See id* ("Provider and Field Nation agree that the mutual obligations to arbitrate disputes provide adequate consideration for this arbitration agreement."). Accordingly, Plaintiff and Field Nation entered into a valid agreement to arbitration in accordance with New Mexico contract law.

**B.      Plaintiff's claims are within the purview of the arbitration agreement.**

In determining what claims are subject to arbitration, the threshold inquiry is an analysis of the contractual language. *See EEOC v. Waffle House, Inc*., 534 U.S. 279, 289 (2002). As the Supreme Court stated in *Waffle House*, "[a]bsent some ambiguity in the agreement . . . it is the

language of the contract that defines the scope of disputes subject to arbitration." *Id*.; *see also Mastrobuono*, 514 U.S. at 57-58.

In this case, Plaintiff's claims - as applied to Field Nation - fall squarely within the scope of the arbitration agreement. Although Plaintiff asserts four separate causes of action against Defendants (Breach of Contract, Failure to Perform; Breach of Good Faith and Fair Dealing; Negligent and/or Intentional Misrepresentation; and Unfair Trade Practices), the only allegations against Field Nation sound in contract. *See* Doc. 11-1 at 14-15, ¶¶ 30-32. Specifically, Plaintiff complains that he was "banned permanently" from using the Field Nation platform. *See id.* Plaintiff's use of the Field Nation platform was governed by the Terms of Use and the Provider Terms and Conditions, which were the only agreements between Plaintiff and Field Nation. Essentially, Plaintiff's only allegations against Field Nation relate to termination of the agreement formed under the Provider Terms and Conditions. *See id*; *see also* Ex. B at § 14.

The arbitration agreement specifically applies to any and all claims arising out of or relating to the following: 1) the Provider Terms [and Conditions]; 2) Plaintiff's provision of services; 3) Plaintiff's use of the [Field Nation] Platform; 4) termination of [the] Agreement between Plaintiff and Field Nation; and 5) all other aspects of the Provider's relationship (or termination of its relationship) with Field Nation. Ex. A at ¶ 10; Ex. B at § 17. Plaintiff's allegations against Field Nation fall within each of these broad categories listed in the arbitration agreement, regardless of whether they are alleged in contract or tort. *See generally*, Doc. 11-1 at 17-20, ¶¶ 39-54 (Counts 3 & 4 do not allege any additional facts specific to Field Nation, LLC). Accordingly, Plaintiff's claims – as applied to Field Nation – are disputes subject to arbitration and all of the claims are arbitrable within the meaning of the FAA and arbitration agreement between the Parties.

## IV. CONCLUSION

Plaintiff entered into a valid agreement to arbitrate, which is governed by the FAA. Plaintiff's claims asserted against Field Nation in this litigation are barred because they fall within the scope of the claims contemplated in the arbitration agreement. As such, the Court should grant the instant Motion and compel Plaintiff and Field Nation, LLC to arbitrate the claims at issue in this case.

If the instant Motion is granted, the Court should dismiss Field Nation, LLC from the instant litigation. The Court may properly dismiss Field Nation, LLC from the instant action in lieu of a forthcoming arbitration proceeding because all of Plaintiff's claims are subject to the arbitration agreement at issue. *See Laurich v. Red Lobster Restaurants, LLC*, 295 F.Supp.3d 1186, 1203 (D.N.M. Nov. 8, 2017)(Browning, J.)("dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable")(*quoting Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001); *see also Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."). Defendant further requests that it be excluded from pre-trial case management deadlines during the pendency of this Motion pursuant to Rule D.N.M.LR-Civ. 16.3(o), or that discovery be stayed as applied to Field Nation, LLC pending determination.

WHEREORE, Defendant Field Nation, LLC requests the Court grant its Motion to Compel Arbitration and to Dismiss, enter an Order directing Plaintiff and Field Nation to arbitrate all claims asserted against Field Nation in this litigation, enter an Order dismissing Field Nation, LLC from the instant litigation pending arbitration, and grant any further relief the Court deems necessary and proper.

4860-9264-8016.1 / 089026-1021

LITTLER MENDELSON, P.C.

*/s/ Jay J. Athey*
Jay J. Athey
JAthey@littler.com
201 Third Street NW, Suite 500
Albuquerque, NM 87102
505.944.9693 (telephone)
505.213.0415 (facsimile)

R. Shawn Oller (NM State Bar No. 8787)
soller@littler.com
Camelback Esplanade
2425 East Camelback Road, Suite 900
Phoenix, AZ 85016
Telephone: 602.474.3600
Facsimile: 602.957.1801

*Attorneys for Defendant Field Nation, LLC*

I hereby certify that, on this 24th day of March, 2023, I filed the foregoing using CM/ECF, which caused service by electronic means on Plaintiff and all counsel of record as follows:

Howard DeLaCruz-Bancroft
P.O. Box 1985
Albuquerque, NM 87192
Email: webglobix@gmail.com
*Plaintiff, Pro Se*

Christopher R. Jones
Jaime L. Wiesenfeld
GORDON REES SCULLY MANSUKHANI, LLP
555 Seventeenth St., Suite 3400
Denver, CO 80202
Email: cjones@grsm.com
       jwiesenfeld@grsm.com

*Attorneys for Jack in the Box Inc.*

10

Andrew J. Simons
Alex G. Elborn
Post Office Box 1945
S<small>UTIN</small>, T<small>HAYER</small> & B<small>ROWNE</small>
Albuquerque, NM 87103-1945
Email: ajs@sutinfirm.com
      age@sutinfirm.com
*Attorneys for Defendants NewBold Corporation On behalf of its division, National Service Center*

_____
Jay J. Athey

4860-9264-8016.1 / 089026-1021