# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

HOWARD DELACRUZ-BANCROFT,

      Plaintiff,                                        Case No. 1:23-cv-00023 JB/kk

      v.

FIELD NATION LLC, SPARTAN COMPUTER
SERVICES/NATIONAL SERVICE CENTER
AKA SCS/NSC AKA NEW BOLD, JACK IN THE BOX INC.,

      Defendants.

## **REQUEST FOR CLERK'S ENTRY OF DEFAULT**

1.     I am the plaintiff appearing In Propria Persona, in the above-entitled action and I am familiar with the file, records and pleadings in this matter.

2.     The Defendants are not individuals, infants, minors or legally classified as incompetent FED R. CIV. P. 55(b)(1) nor are they in the military since they are corporations and not entitled to any relief under the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. Sections 501 and et seq.

3.     The original summons and complaint were filed on November 14, 2022 in the Second Judicial District Court for the State of New Mexico, County of Bernalillo. Case No.: CV 2022-06858 and the parties as such in the above captioned federal case.

4.     Defendants, Field Nation LLC, SCS/NSC aka New Bold and Jack in the Box Inc., were served with a copy of the summons and complaint on November 14, 2022, as reflected on the docket sheet by the proof of service filed on November 14, 2022.

5.      An answer to the complaint was due on December 14, 2022 not being a court holiday or weekend. Defendants Field Nation LLC and Jack in the Box Inc., have failed to properly respond or submit a proper defense to the original complaint, within the time allowed, and due on December 14, 2022 and are now therefore, in default.

6.      As stated by the New Mexico Supreme Court Rules for District Court Civil Procedure RULE 1-004 B. (2) the defendant had thirty (30) days to respond as provided by Rule 1-005 NMRA and failed to accordingly do so.

7.      Defendant, Jack in the Box Inc., filed a non-substantive (Motion to Dismiss) on December 20, 2022 which was not within the 30 days as required by statute. An answer was due on December 14th, 2022 not being a court holiday or weekend.

8.      Defendant Field Nation LLC, did not file a response to the Plaintiff's complaint.

9.      Defendants are indebted to the Plaintiff for their unlawful actions which caused injury, damage and loss to the Plaintiff.

10.     Plaintiff asserts that the Defendant Jack in the Box Inc.'s misleading Motion to Dismiss was not timely filed as it was due on December 14, 2022 and it does not represent a proper defense against the claims asserted by the Plaintiff and was merely a deceptive tactical filing using a Motion to Dismiss in hopes of avoiding any discovery, inspection, and need for review as claimed by the Plaintiff for the resulting injuries and damages and also to avoid any accountability for its intentional tortious interference with Plaintiff's business relations along with other unlawful, immoral and unethical actions.

11.     Plaintiff ensured that the element of "Tortious Interference with a Business Relationship" was detailed, supplemented, specifically referenced and adequately supported in

his complaint by timely amending his complaint on January 10, 2023 as an answer to Defendant Jack in the Box Inc.'s Motion to Dismiss so Defendant's spurious motion would be considered moot on the misleading grounds and deceptive attempt to use "Failure to State a Claim" and "Insufficient Business Transactions exist in New Mexico" as a technicality to avoid inspection, review and discovery.

12. Although the Plaintiff is not a trained lawyer in matters that relate to state and federal law, he is legally allowed to more adequately describe the elements of the initial complaint and amend his tort claims as long as it was within the prescribed manner and statute timelines, for which it was.

13. All of Plaintiff's responses were within the allotted time frame as required and complied with all related statutes.

14. Defendant, Field Nation LLC, filed nothing but instead may improperly assert/claim that its untimely Notice for Removal to Federal Court on January 1, 2023 will suffice as a proper response or defense which it does not and is untimely filed as the deadline was December 14, 2022.

15. Nowhere in the State of New Mexico statutes/rules or under Federal Court Rules for Civil Procedure does such a misleading tactic satisfy or fulfill any statutory requirements as a properly timed responsive pleading against the Plaintiff's original Complaint and for defense of claims or from relief requested by the Plaintiff.

16. Defendant, Field Nation LLC's Notice for Removal to Federal Court filed on January 9, 2023 and Jack in the Box Inc.'s, untimely Motion to Dismiss do not satisfy the statutory requirements for a response that was due on December 14, 2022 according to New

Mexico Supreme Court Rules for District Court Civil Procedure RULE 1-004 B. (2) the defendant had thirty (30) days to respond as provided by Rule 1-005 NMRA nor do they contain any suitable or proper legal defense to the claims of the Plaintiff for the injuries, damages and financial losses suffered by the Plaintiff at the hands of the Defendants, Field Nation LLC, Jack in the Box Inc, and SCS/NSC aka New Bold.

17. Plaintiff is not a trained lawyer in matters that relate to federal law but he is aware that Rule 408 may be attempted to be improperly used by Defendant, Field Nation LLC, as a possible shield against a default judgment.

18. Defendant Field Nation LLC's attorney, Jay Athey, called Plaintiff from 904-377-4824 on December 8, 2022 at 11:37 AM MDST. Plaintiff called back at 11:40-47 using the *67 option not knowing who was calling. I asked who called me and Jay mentioned that he was the attorney for Field Nation and his client wished to settle if possible. He asked what amount I was looking for. Initially, I struggled to answer but mentioned that if I don't have to file anymore paperwork then the amount could reflect just the lost income for the years I was removed from the work platform.

19. I wasn't really prepared to discuss the full extent or amount as I was on the road returning from a job in Roswell but I had said somewhere around the $30k yearly lost income from each defendant for four (4) years would be around $120k per defendant. However, this did not include future lost income from being off the platform and lost clients.

20. Mr. Athey said he would need to talk to his client and see if that amount was reasonable to them. Rule 408 was never mentioned or part of the discussion and therefore is not a

viable defense against the need to properly respond within the allotted 30 days as required by NM Rule 1004 B. (2) or Rule 1-005 NMRA.

21.     I only wanted to consider any offer if ALL the defendants could agree thereby saving EVERYONE from the costs of further litigation which I was certain they knew would lead to the discovery of unsavory, unlawful and discriminating businesses practices by the Defendants via subpoenaed emails, correspondences, phone logs, depositions, etc. something the Defendant's might wish to avoid becoming a matter of public record.

22.     There was never an agreement. Later Mr. Athey responded by email on December 27, 2022 to  webglobix at gmail dot com and mentioned his client wanted to use the 1099's as the basis for any settlement.

23.     Using the dollar amount on a 1099 does not take into account the loss of a hard-earned, five-star rating, and solid-business reputation along with the exponential value of having two (2) work platforms that allowed favorable choices/counteroffer options for accepting jobs so as to choose optimal dates, start/end times, closer locations (especially with inclement weather and road conditions) with maximized hourly or flat rates by getting the best offer and the loss of business relations, past, present and future.

24.     Many companies post similar work offers on both platforms and only those such as the Plaintiff who have earned a five-star, solid business reputation could negotiate the best hourly, travel rates, expense reimbursement rates (costs for materials) and juxtapose hourly rates against flat rates which favor the most competent technicians who receive financial benefits by performing faster, finishing sooner and most efficiently by using a flat rate.

25.     Having the option of two work platforms from which to make advantageous choices/counteroffers was lost, as was the hard-earned, five-star, solid business reputation after being removed and banned from the Field Nation platform along with the leverage to negotiate for those previously mentioned reasons the best rates/conditions and the loss of business relations, past, present and future. The financial loss is not fully understood by just merely looking at a yearly dollar amount on a 1099.

26.     Also, by being removed and banned from the Field Nation work platform meant that Jack In the Box franchises had no alternative basis for payment as I would be prevented from working directly with the franchise because of Jack in the Box Inc.'s "black-listing" of myself, the Plaintiff, for "beyond scope of work" that was not being performed by SCS/NSC (Spartan Computer Services/National Service Center aka New Bold) such as fixing OCS (order confirmation screens) for drive-thrus, and surveillance, alarm systems.

27.     This work was previously performed by myself, the Plaintiff, for the Dancel franchise with SCS/NSC's aka New Bold's full knowledge and acceptance but this accepted prior knowledge was later used as a ruse to retaliate against me, the Plaintiff to be removed and banned from the Field Nation work platform, any work with Jack in the Box Inc., and from any and all of its other franchises.

28.     This was done by SCS/NSC aka New Bold and Jack in the Box Inc., solely to be vindictive and retaliate against the myself, the Plaintiff, for helping the Dancel franchise during a period of "punishment" when the Dancel Franchise was losing thousands of dollars daily because of the inability to function properly. For almost two weeks the franchise was not

provided adequate technical support for all its locations and it could not electronically take or process orders, take debit/credit cards or issue receipts at the 98th street location.

29. Sometime around November 11, 2018 I had been called by the Dancel franchise owner Laura Olguin to see if I could help her out in any way by providing local tech support and talk to both SCS/NSC aka New Bold and Jack in the Box Inc., about getting the additional technical support she desperately needed because the 98th street location was "down hard". I made numerous calls to find out the problem and a possible solution and emailed her my findings.

30. I later found out the intentional motivation behind the refusal of both SCS/NSC aka New Bold and Jack in the Box Inc. to provide adequate technical support for the Dancel franchise was to punish the franchise owner Laura Olguin for not sending timely maintenance/support payments. "They were going to teach her a lesson she would never forget", as I found out later in conversations with SCS/NSC aka New Bold's Steve Faucette aka John Faucette and Steven Burge.

31. As the Plaintiff, I was not knowledgeable, privileged or aware of the extent, past or present condition or history of any such problems between the Dancel franchise and SCS/NSC aka New Bold and Jack in the Box Inc., before that time.

32. As the Plaintiff, I rejected both SCS/NSC aka New Bold and Jack in the Box Inc., attempts to involve and influence me to participate in their retaliatory actions against the Dancel franchise.

33. Later the Dancel franchise owner Laura Olguin learned that I would be removed from working with SCS/NSC aka New Bold and banned from the Field Nation LLC work

platform. She felt sad and offered to sponsor me for a JIB (Jack in the Box) corporate technician certification to work directly as a "self-maintainer" for the franchise.

34. I sent an email November 14, 2022 to Jack in the Box Inc.'s (JIB's) Mike Russel but this option was rejected by him as a duly authorized representative and spokesperson on behalf of Jack in the Box Inc., in charge of that department. I had been "black-listed" and combined with my being removed and banned from the Field Nation platform meant the loss of income for authorized franchise work also.

35. That same day later I also received notice from Field Nation LLC that I was banned from their work platform. This was because of false information they received from both Jack in the Box Inc., and SCS/NSC aka New Bold without an opportunity to refute or respond.

36. It is necessary to understand it isn't just the financial loss reflected on the Field Nation 1099 but the financial loss from all three defendants and their power and influence to intentionally, tortiously interfere with my business relations past, present and future.

37. This also affected any other connected clients/franchises as previously mentioned to include the effect and loss of a hard-earned, five-star, solid business reputation on and off the platform.

38. The value of which is difficult to calculate on paper and can legally allow the assessment of punitive and treble damages against the defendants for such willful, purposeful, malicious, and intentional torturous interference with known contractual relations through unlawful, immoral and unethical retaliatory actions and business practices see *United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 812, 551 N.E.2d 20 n. 6 (Mass. 1990) as it relates to (1) that a valid contract(s) existed, (2) that defendants had knowledge of the contract(s), (3) that

defendants acted intentionally and improperly, and (4) that plaintiff was injured by the defendant's actions.

39. The dollar amount on a 1099 does not adequately explain the loss of past and future income related to being removed and banned by Field Nation LLC that was done without any offer or recourse, arbitration or mediation to verify and defend against the false claims made by SCS/NSC aka New Bold and Jack in the Box Inc., both of whom colluded and conspired to maliciously have the Plaintiff removed and banned from the Field Nation work platform and intentionally tortiously interfered with Plaintiffs business relations.

40. Therefore, there was no further contemplation of any settlement considerations and in no way could Mr. Athey's suggestion of a settlement be considered a legitimate offer. Nor can it be considered a defense against the need to file a timely response as required by statute.

41. Just for comparisons sake another work platform called Workmarket shows the Plaintiffs 1099 /"Earnings Report" for the year 2022 as $41,048.93, making it easy to see the same part-time earnings for any year period on any or each platform. Especially, if two work platforms are available with selective ability to choose and counteroffer the most optimal pay rates, pay types, locations, dates and start/end times.

42. Having only one work platform means less selective opportunities in-town because of the increased amount of technicians/work force for local jobs. This results in having to take jobs at greater distances, less family time, increased expenses, wear and tear on the vehicle, extra costs for fuel, food and lodging. This is a huge problem during bad weather when driving on I-40 is treacherous and unsafe.

43. Taking jobs out of town means not being able to do more than one job at a time. The average job takes about 2 hours but it is not possible to perform multiple jobs when out of town because the average job distance is about 2.5 hours which means 5 hours on the road, stopping for fuel and food and 2 hours on the job and that's already a full 8 hour day "and I'm no spring chicken anymore".

44. Jobs that required early start times at great distances meant overnight lodging/food more often this was an added extra expense not paid by the vendor and time away from the family.

45. A typical job in Farmington, Gallup, Roswell, Las Cruces, or Alamogordo, etc. with a start time before beginning or after ending of business day, when most upgrades and new circuits were installed, required overnight lodging with time away from the family that was rarely paid by the vendor and that only happened when two or more days were required onsite.

46. When two work platforms were available I had the option to take on multiple jobs in-town and avoid the extra expenses, wear and tear, and added stress from treacherous and dangerous driving conditions and of course have more family time.

47. Having just had a daughter who recently missed her 19th birthday by six days because she passed away, is and always will be the most important reason for having the time flexibility that two (2) work platforms afforded. I can never recover the lost moments with my daughter and no amount of money is adequate to replace the loss, nor is a 1099 sufficient to explain the lost value for all the previously mentioned reasons.

48. Plaintiff will later request the Sum Certain default judgment of $644,000.00 based on $40k per year for four years from each of the two default defendants Field Nation and Jack in

the Box Inc., while the Plaintiff was removed and banned from the Field Nation work platform and four years for future lost income from each default defendants and $4,000.00 legal costs.

49. This amount does not include punitive and treble damages which could be considered a deterrent to such future behavior against the defendants.

50. If the court so decides this amount can be assessed at its discretion for compensatory damages, punitive and treble damages related to the malicious and intentional interference with known contractual business relations through willful, purposeful, unlawful, immoral and unethical retaliatory actions and business practices against the Plaintiff.

51. WHEREFORE, Plaintiff ask this court that his request be noted and a Clerk's Entry of Default be issued.

*I declare that under penalty of perjury the foregoing is true and accurate to the best of my knowledge, information and belief, that the amount claimed is justly due to Plaintiff, and that no part thereof has been paid. Further affiant sayeth not.*

                                                            Respectfully Submitted,

By: /s/Howard DeLaCruz-Bancroft
Howard DeLaCruz-Bancroft
P. O. Box 11985
Albuquerque, NM 87192
(505) 489-5403
comvetrix@gmail.com
Plaintiff, In Propia Persona