IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HOWARD DELACRUZ-BANCROFT,

    Plaintiff,

v.                                                          Civ. No. 23-23 JB/KK

FIELD NATION, LLC, *et al.,*

    Defendants.

### MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

Before the Court is Defendant Field Nation, LLC's Motion to Compel Arbitration and to Dismiss Plaintiff's Complaint (Doc. 23) ("Motion"), filed March 24, 2023. Having reviewed the parties' submissions, the record, and the relevant law, and being otherwise sufficiently advised, I find that the Motion is well-taken and RECOMMEND that it be GRANTED.

### I. Factual Background and Procedural History

Plaintiff filed this action in the Second Judicial District Court for the County of Bernalillo, State of New Mexico, on November 14, 2022. (Doc. 1-1 at 3.) In his complaint, Plaintiff asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, intentional and negligent misrepresentation, and violations of the New Mexico Unfair Trade Practices Act against Defendants Field Nation, LLC ("Field Nation"), Spartan Computer Services/National Service Center ("SCS/NSC"), and Jack In The Box Inc. ("JITB"). (*Id.* at 3-15.) In support of his claims against Field Nation, Plaintiff alleges that he used Field Nation's internet "work platform" to obtain Information Technology ("IT") jobs from businesses posting job

---

[1] By an Order of Reference entered on February 22, 2023, United States District Judge James O. Browning referred this case to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. (Doc. 20.)

opportunities on the platform; however, on November 14, 2018, Field Nation permanently banned him from the platform, "meaning that no more IT jobs would be available to Plaintiff" through it. (*Id.* at 4-8.) Plaintiff further alleges that Field Nation banned him from its platform because employees of Defendants SCS/NSC and JITB informed Field Nation "that [he] had violated Field Nation's agreement to not work off the platform," even though he "had worked with SCS/NSC off and separate from the Field Nation platform at the request of SCS/NSC for many years prior."[2] (*Id.* at 7-8.) He adds that Field Nation "did not consider or respond to [his] explanation that SCS/NSC was the one who initiated work off the platform" and "denied [him] any appeal process." (*Id.* at 8-9.)

Field Nation removed the case to this Court on January 9, 2023,[3] and on January 17, 2023, it filed an answer to Plaintiff's complaint. (Docs. 1, 5.) In its answer, Field Nation asserted the affirmative defense that Plaintiff's claims against it "are subject [to] a valid and enforceable arbitration agreement" and "[a]s such, Plaintiff's institution of this litigation is improper, and the Court lacks jurisdiction to hear such claims or provide any of the relief requested in Plaintiff's Complaint." (Doc. 5 at 9.)

On January 26, 2023, the Court found good cause to delay entering a scheduling order pending resolution of the motions to dismiss that Defendants SCS/NSC and JITB filed in state

---

[2] As discussed below, the contract governing Plaintiff's and Field Nation's business relationship is attached to Field Nation's Motion. (*See* Doc. 23-2.) This contract provides that Plaintiff (referred to as "Provider") "shall do all work" for businesses posting jobs on Field Nation's platform (referred to as "Buyers") "directly through the Platform only (or Private Network, as applicable), and shall not communicate with any Buyers, or Buyers' clients, outside of the Platform for the purpose of avoiding any obligations under these Provider Terms, including the obligation to pay the Field Nation Fee. For the term of these Provider Terms and one year thereafter, Provider shall not directly or indirectly: (a) solicit or accept employment or contract services from any Field Nation Buyer or Buyer's clients about whom Provider learned from the Buyer or through the Platform, except for services to be performed pursuant to Work Orders via the Platform without the written consent of Field Nation; or (b) take any action which interferes with the relationship between Field Nation and any of its Buyers or Buyers' clients." (*Id.* at 9-10.)

[3] Pursuant to this Court's order, Field Nation timely filed an amended notice of removal to correct deficiencies in the original notice on January 20, 2023. (Docs. 10, 11.)

2

court prior to removal. (Doc. 13 at 1.)

About two months later, on March 24, 2023, Field Nation filed the Motion presently before the Court, asking the Court to compel Plaintiff and Field Nation to arbitrate Plaintiff's claims against Field Nation and to dismiss Field Nation from this action. (Doc. 23.)

On April 13, 2023, Plaintiff filed a Request for Clerk's Entry of Default in which he argued that Defendants were in default because they had failed to answer or otherwise respond to his complaint within 30 days of November 14, 2022, the date on which he claimed they were served with process. (Doc. 25.) The Court denied Plaintiff's request on April 18, 2023, because "there is no indication in the record that service of process on Defendants was completed on November 14, 2022." (Doc. 26 at 2.)

On April 27, 2023, Field Nation filed a reply in support of its Motion to compel arbitration, pointing out that Plaintiff had not responded to the Motion within the time allowed. (Doc. 28.)

On January 19, 2024, the Court issued an Order to Show Cause requiring Plaintiff to show cause why the Court should not compel the arbitration of and dismiss his claims against Field Nation, because he had failed to timely respond to Field Nation's Motion seeking such relief. (Doc. 32 at 3.) In his show-cause response, Plaintiff asked for an extension of time in which to respond to the Motion. (Doc. 33.) Granting this request, the Court reopened the deadline for Plaintiff to respond to the Motion; and, Plaintiff filed his response in compliance with the new deadline on February 16, 2024. (Docs. 38, 39.) On March 1, 2024, Field Nation filed a reply addressing Plaintiff's response. (Doc. 42.)

## II. Legal Standards

Under the Federal Arbitration Act ("FAA"), a written agreement to arbitrate an existing or future dispute regarding "a transaction involving commerce … shall be valid, irrevocable, and

3

enforceable," unless the agreement is revocable on "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA requires courts to "place[] arbitration agreements on an equal footing with other contracts, and … enforce them according to their terms," though "[l]ike other contracts … they may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67–68 (2010) (citations and quotation marks omitted) ("*Rent-A-Center*").

Under the FAA, a party aggrieved by another party's failure to arbitrate under a written agreement for arbitration may petition a federal court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. When a court receives such a petition, it "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

A motion to compel arbitration under the FAA "sets in motion a summary trial procedure rather than the usual discovery procedures." *BOSC, Inc. v. Bd. of Cnty. Comm'rs of Cnty. of Bernalillo*, 853 F.3d 1165, 1176 (10th Cir. 2017).

> This framework is similar to summary judgment practice: the party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and the opposing party's failure, neglect, or refusal to arbitrate; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement or the failure to comply therewith.

*Id.* at 1177 (quotation marks omitted). Once the moving party meets its initial burden, "the party opposing arbitration must show that a material factual dispute exists" for the court to grant a summary trial. *Id.* at 1178 n.5. If "no material disputes of fact exist, a district court may decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration." *Id.* at 1177 (quotation marks omitted).

"Upon a finding that a matter is referable to arbitration, the FAA … indicates that the district court shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Laurich v. Red Lobster Restaurants, LLC*, 295 F. Supp. 3d 1186, 1203 (D.N.M. 2017) (Browning, J.) (quoting 9 U.S.C. § 3) (quotation marks omitted); *La Frontera Ctr., Inc. v. United Behav. Health, Inc.*, 268 F. Supp. 3d 1167, 1194 (D.N.M. 2017) (Browning, J.) (same). When a party moves to stay an action pending compulsory arbitration, "[t]he proper course" is "for the district court to grant [the] motion and stay the action pending arbitration." *Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994). However, when the party seeking arbitration asks the court for dismissal, "and there is no evidence in the record of any party requesting a stay, it is not error for the district court to dismiss the case." *Hunt v. Jack V. Waters, D.C., P.C.*, 403 F. Supp. 3d 1036, 1063 (D.N.M. 2019) (Browning, J.); *World Fuel Servs., Inc. v. Nambe Pueblo Dev. Corp.*, 362 F. Supp. 3d 1021, 1069 (D.N.M. 2019) (Browning, J.); *Laurich*, 295 F. Supp. 3d at 1203; *see also Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 797 (10th Cir. 1995) (finding that district court did not err in failing to stay proceedings where defendant "requested only that the district court dismiss [p]laintiffs' complaints with prejudice" and there was "no evidence in the record of any request for a stay").

The FAA reflects "a strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration." *Laurich*, 295 F. Supp. 3d. at 1204; *Jerry Erwin Assocs., Inc. v. Est. of Asher by & through Zangara*, 290 F. Supp. 3d 1213, 1233 (D.N.M. 2017) (Browning, J.); *Evangelical Lutheran Good Samaritan Soc'y v. Moreno*, 277 F. Supp. 3d 1191, 1211 (D.N.M. 2017) (Browning, J.) (*"Evangelical Lutheran"*). Consequently, when the applicability of an arbitration agreement is in dispute, "as a matter of federal law, any doubts concerning the scope of

5

arbitrable issues should be resolved in favor of arbitration." *Laurich*, 295 F. Supp. 3d at 1205; *Jerry Erwin Associates*, 290 F. Supp. 3d at 1234; *Evangelical Lutheran*, 277 F. Supp. 3d at 1211–12. "New Mexico state courts also view arbitration as a highly favored method of resolving disputes, in part because it promotes both judicial efficiency and conservation of resources by all parties." *Laurich*, 295 F. Supp. 3d at 1205 (quotation marks and brackets omitted); *Evangelical Lutheran*, 277 F. Supp. 3d at 1212 (same); *La Frontera Center*, 268 F. Supp. 3d at 1195 (same).

Nevertheless, "[w]hile the presumption in favor of arbitration is properly applied in interpreting the scope of an arbitration agreement, this presumption disappears when the parties dispute the existence of a valid arbitration agreement." *Laurich*, 295 F. Supp. 3d at 1205 (quotation marks and ellipses omitted); *Jerry Erwin Associates*, 290 F. Supp. 3d at 1234 (same); *Evangelical Lutheran*, 277 F. Supp. 3d at 1214 (same). The "existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Laurich*, 295 F. Supp. 3d at 1205-06; *Evangelical Lutheran*, 277 F. Supp. 3d at 1214; *La Frontera Center*, 268 F. Supp. 3d at 1196. And, as noted above, "arbitration agreements may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Laurich*, 295 F. Supp. 3d at 1206 (quoting *Rent-A-Center*, 561 U.S. at 68) (brackets and quotation marks omitted); *Jerry Erwin Associates*, 290 F. Supp. 3d at 1234-35 (same); *Evangelical Lutheran*, 277 F. Supp. 3d at 1214 (same).

A party to an otherwise binding arbitration agreement can waive its right to arbitrate. *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 772 (10th Cir. 2010). The Tenth Circuit has "recognized two forms of waiver," though it has "only ever applied the second form: (1) when a party intentionally relinquishes or abandons its right to arbitration; [and,] (2) when a party's conduct in litigation forecloses its right to arbitrate." *BOSC, Inc.*, 853 F.3d at 1170. "The burden of persuasion

lies with the party claiming that the right to demand arbitration has been waived." *Hill*, 603 F.3d at 775; *see also Peterson v. Shearson/Am. Exp., Inc.*, 849 F.2d 464, 466 (10th Cir. 1988) ("A party asserting a waiver of arbitration has a heavy burden of proof.").

"[T]here is no set rule as to what constitutes a waiver or abandonment of the arbitration agreement; the question depends upon the facts of each case." *Hill*, 603 F.3d at 772. The Tenth Circuit has identified several factors courts should consider in deciding whether a party has waived its right to arbitrate, including:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; [and,] (5) whether important intervening steps … had taken place[.]

*BOSC, Inc.*, 853 F.3d at 1170 (quoting *Peterson*, 849 F.2d at 467–68) (quotation marks omitted); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1489 (10th Cir. 1994) (same).[4] Courts are not to apply the *Peterson* factors "mechanically," and they are not "exhaustive or exclusive." *BOSC, Inc.*, 853 F.3d at 1170. The "overarching consideration is whether the party now seeking arbitration is improperly manipulating the judicial process." *Id.* at 1174 (quotation marks omitted). I will consider Field Nation's Motion in light of the foregoing standards.

### III. <u>Analysis</u>

In its Motion, Field Nation asserts that the Court should compel the arbitration of Plaintiff's

---

[4] A sixth *Peterson* factor is "whether the delay affected, misled, or prejudiced the opposing party." *BOSC, Inc.*, 853 F.3d at 1170 (quotation marks omitted); *Metz*, 39 F.3d at 1489 (same); *Peterson*, 849 F.2d at 467–68 (same). However, the United States Supreme Court has recently held that, in deciding whether a party has waived its right to arbitrate, courts should focus on that party's conduct, and not on how its conduct affected the opposing party. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417-19 (2022).

claims against Field Nation because these parties entered into a valid, binding arbitration agreement and Plaintiff's claims against Field Nation fall within the scope of the agreement. (Doc. 23.) In support, Field Nation attaches to its Motion a document entitled "Provider Terms and Conditions" ("Provider Terms"), along with its Chief Technology Officer's affidavit attesting that the document is a true and accurate copy of the contract governing Plaintiff's and Field Nation's relationship, and that Plaintiff agreed to the Provider Terms in exchange for the use of Field Nation's platform. (Docs. 23-1, 23-2.) In his response to Field Nation's Motion, Plaintiff disputes neither that the Provider Terms agreement attached to the Motion is authentic, nor that it is a valid, enforceable contract that governs his relationship with Field Nation. (*See generally* Doc. 39.)

The first page of the Provider Terms states—in bold-faced, capital letters—that "this agreement contains mandatory individual arbitration agreement and class action/jury trial waiver provisions that require the use of arbitration on an individual basis to resolve covered disputes." (Doc. 23-2 at 2.) Section 17 of the agreement states in pertinent part that the parties

> mutually agree to resolve any and all covered justiciable disputes between them exclusively through final and binding arbitration instead of a court or jury trial. This arbitration agreement is governed by the [FAA] and applies to any and all claims arising out of or relating to the Provider Terms, this arbitration agreement, [Plaintiff's] classification as an independent contractor, [Plaintiff's] provision of services, [Plaintiff's] use of the Platform, any payments made or received by [Plaintiff] through the Platform or arising out of or relating to the acceptance or performance of services arranged through the Platform, the termination of this Agreement, and all other aspects of [Plaintiff's] relationship (or the termination of [his] relationship) with Field Nation, past, present or future, whether arising under federal, state or local statutory and/or common law. [Plaintiff] and Field Nation agree that the mutual obligations to arbitrate disputes provide adequate consideration for this arbitration agreement.

(*Id.* at 12.) According to the Provider Terms, the arbitration agreement in Section 17 "survives after the termination of the Provider Terms and/or after [Plaintiff] ceases any assignment and/or relationship with Field Nation." (*Id.* at 14.)

In light of the foregoing evidence, Field Nation has carried its initial burden to show the existence of an enforceable arbitration agreement applicable to the claims Plaintiff has brought against it in this lawsuit. *BOSC, Inc.*, 853 F.3d at 1177. As noted above, Plaintiff's claims against Field Nation arise out of Field Nation's alleged actions permanently banning Plaintiff from its work platform.[5] (Doc. 1-1 at 3-15.) These claims clearly fall within the scope of the arbitration agreement in the Provider Terms, which encompasses "any and all claims arising out of or relating to the Provider Terms, … [Plaintiff's] use of the Platform, … the termination of this Agreement, and all other aspects of [Plaintiff's] relationship (or the termination of [his] relationship) with Field Nation." (Doc. 23-2 at 12.)

In addition, Field Nation has carried its initial burden to show Plaintiff's failure, neglect, or refusal to arbitrate, *BOSC, Inc.*, 853 F.3d at 1177, in light of Plaintiff's state court complaint, in which Plaintiff brings claims subject to arbitration in a judicial proceeding, and Field Nation's counsel's representation that he "made multiple good faith requests" for Plaintiff's concurrence with its Motion to compel arbitration, to which Plaintiff failed to respond. (Doc. 1-1 at 3-15; Doc. 23 at 1.) Accordingly, the burden shifts to Plaintiff to show that a genuine issue of material fact exists. *BOSC, Inc.*, 853 F.3d at 1177.

In his response to the Motion, Plaintiff does not dispute that the arbitration agreement in the Provider Terms is valid and enforceable, nor does he dispute that it is applicable to his claims against Field Nation. (*See generally* Doc. 39.) He also does not dispute that he has failed or refused to arbitrate these claims. (*Id.*) Nevertheless, Plaintiff contends that the Court should deny Field Nation's Motion, arguing that Field Nation has waived its right to arbitrate by acting inconsistently

---

[5] Plaintiff also makes conclusory allegations to the effect that "Defendants" made actionable misrepresentations of fact to and about him. (Doc. 1-1 at 12-13.) However, he fails to allege any specific factual representations that Field Nation or its agents made. (*See generally id.*)

9

with that right in three ways. (*Id.* at 2-4, 9, 11-13.) As explained below, I disagree.

Plaintiff first contends that Field Nation waived its right to arbitrate by failing to answer or otherwise respond to his complaint by December 14, 2022. (*Id.* at 2-4, 12-13.) But as the Court found in its Order Denying Plaintiff's Request for Clerk's Entry of Default, the record does not support Plaintiff's assertion that Field Nation's responsive pleading was due by this date. (Doc. 26 at 2.)

It is true that, in a civil action filed in a New Mexico district court, a defendant's answer is due within 30 days after service of process on it. N.M. R. Civ. P. 1-012(A). And the record in this case does show that Plaintiff mailed summonses and a copy of the complaint to each Defendant's registered agent on November 14, 2022. (Doc. 1-1 at 15-24.) However, in state court civil actions, service by mail is only complete when a person authorized to accept service on a defendant's behalf "signs a receipt" for the mailing. N.M. R. Civ. P. 1-004(E)(3), (G)(3)). And here,

> the record does not contain proofs of service that include the dates of delivery by the post office and copies of Defendants' signature receipts, nor does it otherwise reflect that persons authorized to accept service of process on Defendants' behalf signed receipts for these mailings. Thus, there is no indication in the record that service of process on Defendants was completed on November 14, 2022,

and that their responsive pleadings were therefore due by December 14, 2022. (Doc. 26 at 2 (footnote and citation omitted).)

Also, the record reflects that Field Nation filed an answer to Plaintiff's complaint on January 17, 2023, the first business day after seven days from removal in accordance with Federal Rule of Civil Procedure 81.[6] (Doc. 5); Fed. R. Civ. P. 81(c)(2)(C). Nor does anything in the record

---

[6] Under Federal Rule of Civil Procedure 6, if a deadline falls on a "Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C). Field Nation removed this case on January 9, 2023. (Doc. 1.) Seven days after January 9, 2023, was Monday, January 16, 2023, a legal holiday. The next day that was not a Saturday, Sunday, or legal holiday was Tuesday, January 17, 2023.

indicate that the removal was untimely. As such, even viewed in the light most favorable to Plaintiff, the record does not show a genuine factual dispute regarding whether Field Nation's answer was untimely or whether it otherwise acted inconsistently with its right to arbitrate by filing its answer when it did.

Plaintiff next argues that Field Nation waived its right to arbitrate because it banned him from its work platform "without any offer or recourse, arbitration or mediation to verify and defend against the false claims made by [Defendants SCS/NSC and JITB]." (Doc. 39 at 9.) Plaintiff adds that Field Nation said it was "investigating a possible … policy violation but never sent any results of [its] investigation" and did not respond satisfactorily to Plaintiff's messages and phone calls, and that its "encouragement to review the Dispute Process article … was not adequate and did not address any compelled arbitration." (*Id.* at 11-12.)

Critically, however, Plaintiff has pointed to no provision in the Provider Terms agreement (or indeed in any other document) that required Field Nation to take any particular steps before terminating its business relationship with Plaintiff. (*See generally id.*) On the contrary, the Provider Terms expressly indicate that either Plaintiff or Field Nation could terminate their relationship "at any time and for any reason," and that Field Nation could do so without notice. (Doc. 23-2 at 10.) Thus, even accepting as true Plaintiff's allegations that Field Nation banned him from its platform without taking any of the steps listed in his complaint, nothing about this course of conduct is inconsistent with Field Nation maintaining its right to arbitrate.

Finally, Plaintiff argues that Field Nation waived its right to arbitrate "by inaction [and] violating its policies and procedures." (Doc. 39 at 12.) But Plaintiff has not identified any policies or procedures that Field Nation may have violated. (*See generally id.*) And the record shows that Field Nation, far from being inactive, has taken affirmative steps to preserve its right to arbitrate,

both by asserting its right to arbitrate in its answer and by filing and timely and fully briefing the present Motion. (Doc. 5 at 9; Docs. 23, 28, 42.) Thus, none of Plaintiff's arguments raise a genuine issue of material fact regarding whether Field Nation has waived its right to arbitrate.

Moreover, a review of the *Peterson* factors confirms the absence of a genuine factual dispute on the question of waiver. *See BOSC, Inc.*, 853 F.3d at 1170; *Metz*, 39 F.3d at 1489; *Peterson*, 849 F.2d at 467–68. First, as just discussed, Plaintiff has failed to show a genuine factual dispute regarding whether Field Nation's actions vis-à-vis Plaintiff are inconsistent with maintaining its right to arbitrate.

Second, when Field Nation first asserted its right to arbitrate, the litigation machinery had not been substantially invoked, nor were the parties well into preparation of the case. On the contrary, Field Nation removed this lawsuit less than two months after Plaintiff filed his complaint in state court and asserted its right to arbitrate in its answer, which it filed very shortly after removal. (Doc. 1; Doc. 5 at 9.) It is undisputed that the lawsuit was still in its early stages at that point, and essentially remains so to this day. No hearings have been scheduled; no case management deadlines have been set; no discovery has been permitted.

Third, there is certainly no trial setting in this matter, and there is no genuine factual dispute regarding whether Field Nation delayed for a long period before asserting its right to arbitrate. Indeed, even if Field Nation had received notice of the lawsuit on November 14, 2022, the very day the lawsuit was filed—and there is nothing to show that it did—it asserted its right to arbitrate 64 days later. As a matter of law, this cannot be considered a long delay.[7]

Fourth, Field Nation has not filed a counterclaim against Plaintiff. (*See generally* Doc. 5.)

---

[7] Field Nation cannot be held responsible for the fact that its Motion has remained pending from March 2023 to the present. It is certainly not responsible for Plaintiff's initial failure to respond to the Motion within the time allowed, (*see* Docs. 28, 32); it opposed Plaintiff's request to reopen his response deadline, (Doc. 36); and, to state the obvious, it has no control over when the Court will rule on the Motion.

12

Fifth, the only arguably "important intervening step[]" between the filing of Plaintiff's complaint and Field Nation's answer asserting its right to arbitrate was Field Nation's removal of this action to this Court. *BOSC, Inc.*, 853 F.3d at 1170; *Metz*, 39 F.3d at 1489; *Peterson*, 849 F.2d at 467–68. However, removing a case to federal court does not, without more, waive the removing party's right to arbitrate. *See Hudson v. Peak Med. New Mexico No. 3 LLC*, 21-cv-1126, 2022 WL 2904378, at *2 (D.N.M. Jul. 22, 2022) (Strickland, J.) (citing cases).

Finally, as for the "overarching consideration" the *Peterson* factors are designed to illuminate, *i.e.*, whether the party seeking arbitration has improperly manipulated the judicial process, *BOSC, Inc.*, 853 F.3d at 1174, Plaintiff has failed to show a genuine factual dispute regarding whether Field Nation has in any way attempted to manipulate the judicial process to its advantage by delaying the assertion of its right to arbitrate. On the contrary, and as already discussed, it is undisputed that Field Nation asserted its right to arbitrate early in this litigation and since then has acted in a manner wholly consistent with that right. Plaintiff has therefore failed to meet his burden to show a genuine issue of material fact regarding whether Field Nation has waived its right to compel Plaintiff to arbitrate his claims against it. *See, e.g., Cornoyer v. AT&T Mobility Servs., LLC*, No. 15-cv-474, 2016 WL 6404853, at *13 (D.N.M. Oct. 5, 2016) (Browning, J.) (finding no waiver of right to arbitrate despite 213-day delay in moving to compel arbitration "where no party is blatantly manipulating the litigation machinery").

Plaintiff also suggests that the Court should deny Field Nation's Motion because arbitration "does not afford the opportunity for discovery." (Doc. 39 at 11-12.) However, Plaintiff is plainly mistaken on this point. The arbitration agreement in the Provider Terms undisputedly and expressly authorizes the arbitrator to allow the parties to conduct discovery. (Doc. 23-2 at 13.)

For all of the above reasons, although I have viewed the facts in the light most favorable

13

to him, Plaintiff has failed to show any genuine issue of material fact that would require a summary trial on the applicability or enforceability of the arbitration agreement in the Provider Terms or his failure or refusal to arbitrate his claims against Field Nation. *BOSC, Inc.*, 853 F.3d at 1177. I therefore recommend that the Court compel arbitration of these claims in accordance with the agreement.

I must next address whether the Court should dismiss Plaintiff's claims against Field Nation or instead stay judicial proceedings on them pending arbitration. Field Nation has asked the Court to dismiss these claims. (Doc. 23.) Further, no party has asked for a stay of the claims pending arbitration, and Plaintiff does not dispute that all of his claims against Field Nation fall within the scope of the Provider Terms' arbitration agreement. (*See generally* Doc. 39.) Also, it does not appear that dismissing Plaintiff's claims against Field Nation will significantly impede the Court's ability to resolve his claims against Defendants SCS/NSC and JITB. As such, and because a stay pending arbitration could be protracted, I recommend that Plaintiff's claims against Field Nation be dismissed. *Armijo*, 72 F.3d at 797; *Hunt*, 403 F. Supp. 3d at 1063; *World Fuel Servs., Inc.*, 362 F. Supp. 3d at 1069; *Laurich*, 295 F. Supp. 3d at 1203.

## IV. <u>Conclusion</u>

For the reasons set forth above, I recommend that the Court grant Defendant Field Nation, LLC's Motion to Compel Arbitration and to Dismiss Plaintiff's Complaint (Doc. 23), compel arbitration of the claims Plaintiff has brought against Field Nation in this action, and dismiss those claims.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**