## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

HOWARD DELACRUZ-BANCROFT,

      Plaintiff,

vs.                                     No. CIV 23-0023 JB/KK

FIELD NATION, LLC; SPARTAN
COMPUTER SERVICES/NATIONAL
SERVICE CENTER, a.k.a. SCS/NSC; JACK
IN THE BOX INC. and NEWBOLD
CORPORATION, on behalf of its division
national service center,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER ADOPTING THE MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>

**THIS MATTER** comes before the Court on: (i) the Magistrate Judge's Proposed Findings and Recommended Disposition, filed March 11, 2024 (Doc. 46)("PFRD"); and (ii) the Plaintiff's Response to Magistrate Judge's Proposed Findings and Recommended Disposition, filed March 25, 2024 (Doc. 47)("Objections").[1]  In the PFRD, the Honorable Kirtan Khalsa, United States Magistrate Judge for the United States District Court for the District of New Mexico, recommends that the Court grant Defendant Field Nation, LLC's Motion to Compel Arbitration and to Dismiss Plaintiff's Complaint, filed March 24, 2023 (Doc. 23)("Motion").  The PFRD notifies the parties of their ability to file objections within fourteen days and that failure to file objections waives appellate review.  <u>See</u> PFRD at 15.  On March 25, 2024, Plaintiff Howard DeLaCruz-Bancroft filed his Objections to the PFRD.  <u>See</u> Objections at 1.  The primary issue is whether the

---

[1]The Court determines that no response to Plaintiff's Objections by Defendant Field Nation, LLC is required, because, for the reasons explained below, the Court will adopt Magistrate Judge Khalsa's PFRD recommending that the Court grant Defendant Field Nation, LLC's Motion to Compel Arbitration and to Dismiss Plaintiff's Complaint, filed March 24, 2023 (Doc. 23).

Court should enforce the arbitration agreement in the Terms and Conditions Agreement at 12-14 (dated August 29, 2017), filed March 24, 2023 (Doc. 23-2)("Terms and Conditions Agreement"), between DeLaCruz-Bancroft and Field Nation, and compel arbitration of DeLaCruz-Bancroft's claims against Field Nation in this action pursuant to rule 72(b) of the Federal Rules of Civil Procedure.   The Court has conducted a de novo review of the record and has "given fresh consideration" to all parts of Magistrate Judge Khalsa's PFRD to which DeLaCruz-Bancroft has properly objected.   United States v. Raddatz, 447 U.S. 667, 675 (1980)("Raddatz").   After conducting this de novo review, the  Court: (i) overrules DeLaCruz-Bancroft's Objections; (ii) adopts Magistrate Judge Khalsa's conclusions; (iii) grants the Motion; and (iv) dismisses the Complaint for Breach of Contract and Failure to Perform, Breach of Good Faith and Fair Dealing, Negligent and/or Intentional Misrepresentation, and Unfair Trade Practices, filed January 9, 2023 (Doc. 11-1)("Complaint").

**LAW REGARDING OBJECTIONS TO PROPOSED**
**<u>FINDINGS AND RECOMMENDATIONS</u>**

District courts may refer dispositive motions to a Magistrate Judge for a recommended disposition.  See Fed. R. Civ. P. 72(b)(1) ("A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense or a prisoner petition challenging the conditions of confinement.").   Rule 72(b)(2) governs objections: "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2).  Finally, when resolving objections to a Magistrate Judge's proposal, "[t]he district judge must determine de novo any part of the Magistrate Judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the

recommended disposition; receive further evidence; or return the matter to the magistrate judge

with instructions." Fed. R. Civ. P. 72(b)(3).  Similarly, 28 U.S.C. § 636 provides:

> A judge of the court shall make a de novo determination of those portions of the
> report or specified proposed findings or recommendations to which objection is
> made.  A judge of the court may accept, reject, or modify, in whole or in part, the
> findings or recommendations made by the magistrate judge.  The judge may also
> receive further evidence or recommit the matter to the magistrate judge with
> instructions.

28 U.S.C. § 636(b)(1)(C).

"The filing of objections to a magistrate's report enables the district judge to focus attention

on those issues -- factual and legal -- that are at the heart of the parties' dispute." United States v.

One Parcel of Real Prop., with Bldgs, Appurtenances, Improvements, & Contents, Known as: 2121

East 30th Street, Tulsa Okla., 73 F.3d 1057, 1059 (10th Cir. 1996) ("One Parcel")(quoting Thomas

v. Arn, 474 U.S. 140, 147 (1985)).  As the United States Court of Appeals for the Tenth Circuit

has noted, "the filing of objections advances the interests that underlie the Magistrate's Act[, 28

U.S.C. §§ 631-639], including judicial efficiency."  One Parcel, 73 F.3d at 1059 (citing Niehaus

v. Kan. Bar Ass'n, 793 F.2d 1159, 1165 (10th Cir. 1986)).  The Tenth Circuit has held "that a

party's objections to the magistrate judge's report and recommendation must be both timely and

specific to preserve an issue for de novo review by the district court or for appellate review."  One

Parcel, 73 F.3d at 1060.  "To further advance the policies behind the Magistrate's Act, [the Tenth

Circuit], like numerous other circuits, ha[s] adopted 'a firm waiver rule' that 'provides that the

failure to make timely objections to the magistrate's findings or recommendations waives appellate

review of both factual and legal questions.'"  One Parcel, 73 F.3d at 1059 (quoting Moore v. United

States, 950 F.2d 656, 659 (10th Cir.1991)).  "[O]nly an objection that is sufficiently specific to

focus the district court's attention on the factual and legal issues that are truly in dispute will

advance the policies behind the Magistrate's Act."  One Parcel, 73 F.3d at 1060.  In addition to requiring specificity in objections, the Tenth Circuit has stated that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."  Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996).  See United States v. Garfinkle, 261 F.3d 1030, 1030-31 (10th Cir. 2001)("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.").  In an unpublished opinion, the Tenth Circuit has stated that "the district court correctly held that [a plaintiff] had waived [an] argument by failing to raise it before the magistrate."  Pevehouse v. Scibana, 229 F. App'x 795, 796 (10th Cir. 2007).[2]

The Tenth Circuit also has noted, "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'"  One Parcel, 73 F.3d at 1060 (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate [judge']s order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations.")).  In One Parcel, the Tenth Circuit notes that the district judge

---

[2]Pevehouse v. Scibana is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. [. . .] However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citing In re Citation of Unpublished Opinions/Ords. & Judgments, 151 F.R.D. 470 (10th Cir. 1993)).  The Court concludes that Pevehouse v. Scibana and Farmland Nat'l Beef Packing Co., L.P. v. Stone Container Corp., 98 F. App'x 752 (10th Cir. 2004), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

decided sua sponte to conduct a de novo review despite the lack of specificity in the objections, but the Tenth Circuit held that it would deem the issues waived on appeal, because such actions would advance the interests underlying the waiver rule.  See 73 F.3d at 1060-61 (citing cases from other Courts of Appeals where district courts elected to address merits despite potential application of waiver rule, but Courts of Appeals opted to enforce waiver rule).

Where a party files timely and specific objections to the Magistrate Judge's PFRD "on . . . dispositive motions, the statute calls for a de novo determination, not a de novo hearing." Raddatz, 447 U.S. 674.  The Tenth Circuit has stated that a de novo determination, pursuant to 28 U.S.C. § 636(b), "requires the district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation."  In re Griego, 64 F.3d 580, 583-84 (10th Cir. 1995).  The Supreme Court of the United States has noted that, although a district court must make a de novo determination of the objections to recommendations under 28 U.S.C. § 636(b)(1), the district court is not precluded from relying on the Magistrate Judge's PFRD.  See Raddatz, 447 U.S. at 676 ("[I]n providing for a 'de novo determination' rather than de novo hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations.")(quoting 28 U.S.C. § 636(b)(1)).  See Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cnty., Okla., 8 F.3d 722, 724-25 (10th Cir. 1993)(holding that the district court's adoption of the Magistrate Judge's "particular reasonable-hour estimates" is consistent with a de novo determination, because "the district court 'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.'" (quoting 28 U.S.C. § 636(b)(1))(emphasis in Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cnty., Okla.)).

Where no party objects to the Magistrate Judge's PFRD, the Court has, as a matter of

course in the past and in the interests of justice, reviewed the Magistrate Judge's recommendations.

In Workheiser v. City of Clovis, where the plaintiff failed to respond to the Magistrate Judge's

PFRD, although the Court determined that the plaintiff "has waived his opportunity for the

Court to conduct review of the factual and legal findings in the [PFRD]," the Court

nevertheless conducted such a review.  No. CIV 12-0485, 2012 WL 6846401, at *3 (D.N.M.

December 28, 2012)(Browning, J.).    The Court generally does not review, however, the

Magistrate Judge's PFRD de novo in the absence of an objection, and determine independently

necessarily what it would do if the issues had come before the Court first, but rather adopts

the PFRD where "[t]he Court cannot say that the Magistrate Judge's recommendation . . . is

clearly erroneous, arbitrary, [obviously[3]] contrary to law, or an abuse of discretion."  Workheiser

---

[3]The Court previously used as the standard for review when a party does not object to the Magistrate Judge's PFRD whether the recommendation was "clearly erroneous, arbitrary, contrary to law, or an abuse of discretion," thus omitting "obviously" in front of contrary to law. Solomon v. Holder, No. CIV 12-1039, 2013 WL 499300, at *4 (D.N.M. January 31, 2013)(Browning J.)(adopting the recommendation to which there was no objection, stating: "The Court determines that the PFRD is not clearly erroneous, arbitrary, contrary to law, or an abuse of discretion, and accordingly adopts the recommendations therein"); O'Neill v. Jaramillo, No. CIV 11-0858, 2013 WL 499521 (D.N.M. January 31, 2013)(Browning, J.)("Having reviewed the PRFD under that standard, the Court cannot say that the Magistrate Judge's recommendation is clearly erroneous, arbitrary, contrary to law, or an abuse of discretion. The Court thus adopts Judge Wormuth's PFRD.")(citing Workheiser v. City of Clovis, 2012 WL 6846401, at *3); Galloway v. JP Morgan Chase & Co., No. CIV 12-0625, 2013 WL 503744 (D.N.M. January 31, 2013)(Browning, J.)(adopting the Magistrate Judge's recommendations upon determining that they were not "clearly contrary to law, or an abuse of discretion."). The Court concludes that "contrary to law" does not reflect accurately the deferential standard of review which the Court intends to use when there is no objection. Finding that a Magistrate Judge's recommendation is contrary to law would require the Court to analyze the Magistrate Judge's application of law to the facts or the Magistrate Judge's delineation of the facts -- in other words performing a de novo review, which is required only when a party objects to the recommendations. The Court concludes that adding "obviously" better reflects that the Court is not performing a de novo review of the Magistrate Judges' recommendations. Going forward, therefore, the Court will review, as it has done for some time now, Magistrate Judges' recommendations to which there are no objections for whether the recommendations are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.

v. City of Clovis, 2012 WL 6846401, at *3.

This review, which is deferential to the Magistrate Judge's work when there is no objection, nonetheless provides some review in the interest of justice, and seems more consistent with the waiver rule's intent than no review at all or a full-fledged review. Accordingly, the Court considers this standard of review appropriate. See Thomas v. Arn, 474 U.S. at 151 ("There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate."). The Court is reluctant to have no review at all if its name is going at the bottom of the order adopting the Magistrate Judge's PFRD.

## ANALYSIS

In the PFRD, Magistrate Judge Khalsa concludes that the arbitration agreement is valid and enforceable and that Field Nation has not waived its right to arbitrate. See PFRD at 9-14. In his Objections, DeLaCruz-Bancroft contends that the arbitration agreement is not "valid and enforceable," Objections at 3, and, even if the arbitration agreement were enforceable, Field Nation has waived its right to arbitrate by making procedural errors and acting in bad faith, see Objections at 2-3, 9, 5-8, 9, 21. The Court agrees with Magistrate Judge Khalsa's analysis, and, therefore, will adopt the PFRD, overrule DeLaCruz-Bancroft's Objections, and grant the Motion.

First, the Court agrees with Magistrate Judge Khalsa that the arbitration agreement is valid and enforceable. In the Motion, Field Nation argues that the Court should compel the arbitration of DeLaCruz-Bancroft's claims against it, because these parties entered into a valid, binding arbitration agreement, and because DeLaCruz-Bancroft's claims fall within the arbitration agreement's scope. See Motion at 2. Field Nation attaches the Terms and Conditions Agreement to the Motion, along with its Chief Technology Officer's affidavit attesting that this document is

a true and accurate copy of the contract governing the parties' relationship, and that DeLaCruz-Bancroft agreed to the Terms and Conditions Agreement in exchange for the use of Field Nation's work platform.  <u>See</u> Terms and Conditions Agreement; Affidavit of Travis Emslander in Support of Motion to Compel Arbitration and to Dismiss Plaintiff's Complaint ¶ 9, at 3 (dated March 22, 2023), filed March 24, 2023 (Doc. 23-1).

As an initial matter, the Court concludes that Field Nation carries its burden to show the existence of an enforceable arbitration agreement applicable to the claims which DeLaCruz-Bancroft brought against it in this lawsuit.  <u>See</u> <u>BOSC, Inc. v. Bd. of Cnty. Comm'rs of Cnty. of Bernalillo</u>, 853 F.3d 1165, 1177 (10th Cir. 2017)("<u>BOSC, Inc.</u>").  The Terms and Conditions Agreement's first page states, in bold-faced, capital letters, that "this agreement contains mandatory individual arbitration agreement and class action/jury trial waiver provisions that require the use of arbitration on an individual basis to resolve covered disputes."  Terms and Conditions Agreement at 2.  Section 17 of the Terms and Conditions Agreement, in turn, states that the parties

> mutually agree to resolve any and all covered justiciable disputes between them exclusively through final and binding arbitration instead of a court or jury trial. This arbitration agreement is governed by the Federal Arbitration Act . . . and applies to any and all claims arising out of or relating to the Provider Terms, this arbitration agreement, [DeLaCruz-Bancroft's] classification as an independent contractor, [DeLaCruz-Bancroft's] provision of services, [DeLaCruz-Bancroft's] use of the Platform, any payments made or received by [DeLaCruz-Bancroft] through the Platform or arising out of or relating to the acceptance or performance of services arranged through the Platform, the termination of this Agreement, and all other aspects of [DeLaCruz-Bancroft's] relationship (or the termination of [his] relationship) with Field Nation, past, present or future, whether arising under federal, state or local statutory and/or common law.  [DeLaCruz-Bancroft] and Field Nation agree that the mutual obligations to arbitrate disputes provide adequate consideration for this arbitration agreement.

Terms and Conditions Agreement at 12.  Furthermore, the arbitration agreement in Section 17

- 8 -

"survives after the termination of the Provider Terms and/or after [DeLaCruz-Bancroft] ceases any assignment and/or relationship with Field Nation." Terms and Conditions Agreement at 14. Given this evidence, the Court concludes that DeLaCruz-Bancroft's claims against Field Nation arise out of Field Nation's alleged actions permanently banning DeLaCruz-Bancroft from its platform. See Complaint ¶¶ 10-32, at 11-15 (detailing DeLaCruz-Bancroft ban from Field Nation's platform). DeLaCruz-Bancroft's claims fall within the scope of the arbitration agreement in the Terms and Conditions Agreement, which covers "any and all claims arising out of or relating to the Provider Terms, . . . [DeLaCruz-Bancroft's] use of the Platform, . . . the termination of this Agreement, and all other aspects of [DeLaCruz-Bancroft's] relationship (or the termination of [his] relationship) with Field Nation." Terms and Conditions Agreement at 12. Additionally, Field Nation carries its initial burden to show DeLaCruz-Bancroft's failure, neglect, or refusal to arbitrate, see BOSC, Inc., 853 F.3d at 1177, by way of DeLaCruz-Bancroft's State court complaint and Field Nation's attorney's statement that he made multiple requests for DeLaCruz-Bancroft's concurrence with the motion to compel arbitration, but DeLaCruz-Bancroft failed to respond, see Complaint ¶¶ 10-32, at 11-15; Motion at 1. The burden therefore shifts to DeLaCruz-Bancroft to show the existence of a genuine issue of material fact. See BOSC, Inc., 853 F.3d at 1177.

The Court agrees with Magistrate Judge Khalsa that Field Nation did not waive its right to arbitrate by acting inconsistently with that right, as DeLaCruz-Bancroft argues. See Plaintiff's Response to Defendants Motion to Dismiss and Motion to Compel Arbitration and to Dismiss Plaintiff's Complaint at 2-4, 9, 11-13, filed February 16, 2024 (Doc. 39)("Response"); Objections at 2-3. Initially, as the PFRD explains, the record does not support DeLaCruz-Bancroft's assertion that Field Nation's responsive pleading was due by December 14, 2022, and, as a result, that Field Nation's removal was untimely. See PFRD at 10; Garcia v. Martinez, 414 F. Supp. 3d 1348, 1352-

54 (D.N.M. 2019)(Parker, J.)(concluding that the defendants' removal was timely despite that the plaintiff mailed service to the Defendants more than thirty days before removal, because "[t]he processes were not signed"); Rule 1-004(E)(3) NMRA.  Moreover, DeLaCruz-Bancroft waived the argument that Field Nation improperly removed the case, because he did not request timely that the case be remanded.  See 28 U.S.C. § 1447("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."); Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 392 (1998)(holding that for "removals that are defective . . . because the removal took place after relevant time limits had expired . . . there must be a motion to remand filed no later than 30 days after the filing of the removal notice" (citing 28 U.S.C. § 1447(c)); Farmland Nat'l Beef Packing Co., L.P. v. Stone Container Corp., 98 F. App'x 752, 756 (10th Cir. 2004)("All of the circuit courts to have addressed the question have held that the thirty-day period binds the district court as well as the party opposing removal.").  Furthermore, the record reflects that Field Nation responded to the Complaint when it filed its Defendant Field Nation, LLC's Answer and Affirmative Defenses (Doc. 5)("Answer") on January 17, 2023, the first business day after seven days from removal in accordance with rule 81 of the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 81(c)(2)(C).  DeLaCruz-Bancroft's citation to Morgan v. Sundance, Inc., 596 U.S. 411 (2022), is unavailing.  See Objections at 12-13, 16, 21; Response at 12.  Field Nation did not "defend[] itself against [DeLaCruz-Bancroft]'s suit as if no arbitration agreement existed" and then "change course" and raise the arbitration agreement as a defense.  See Morgan v. Sundance, Inc., 596 U.S. at 414-15.  Thus, the record does not show a genuine factual dispute whether Field Nation's Answer was untimely or whether it otherwise acted inconsistently with its right to arbitrate by filing the Answer when it did.

Additionally, as a matter of law, Field Nation's alleged conduct in banning DeLaCruz-Bancroft from its platform "without any offer or recourse, arbitration or mediation," Response at 9; see Objections at 4, and in failing to send DeLaCruz-Bancroft investigation results, or to respond to his calls and e-mails after the ban, see Objections at 5-6, 8; Response at 11-12, does not constitute a waiver of the right to arbitrate. DeLaCruz-Bancroft has pointed to nothing in the Terms and Conditions Agreement, or in any other document, requiring Field Nation to take any particular steps before ending its business relationship with DeLaCruz-Bancroft. Indeed, the Terms and Conditions Agreement expressly allow either party to terminate the relationship at any time and for any reason, and they allow Field Nation to do so without notice. Terms and Conditions Agreement at 10. Finally, although DeLaCruz-Bancroft argued that Field Nation waived its right to arbitrate "by inaction [and] violating its policies and procedures," Response at 12; see Objections at 5, he does not identify any policies or procedures that Field Nation might have violated. The record demonstrates that Field Nation has not been inactive, but rather has taken affirmative steps to preserve its right to arbitrate by asserting that right in its Answer, and by filing and timely briefing the motion to compel arbitration. See Answer at 9; Motion at 1. Thus, none of the arguments in DeLaCruz-Bancroft's Response to the Motion raise a genuine issue of material fact whether Field Nation has waived its right to arbitrate, and nothing in the Objections alters this conclusion.

Moreover, a review of the factors the Tenth Circuit set forth in Peterson v. Shearson/Am. Exp., Inc., 849 F.2d 464, 467-78 (10th Cir. 1988)("Peterson")(the "Peterson factors"), confirms the absence of a genuine factual dispute on the question of waiver. See BOSC, Inc., 853 F.3d at 1170; Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1489 (10th Cir. 1994). First, as discussed, DeLaCruz-Bancroft does not show a genuine factual dispute whether Field

Nation's actions are inconsistent with its right to arbitrate.  See Analysis supra, at 10-11; Peterson,

849 F.2d. at 467.  Second, when Field Nation first asserted its right to arbitrate, "'the litigation

machinery had not been substantially invoked,'" nor were the parties "'well into preparation of the

case.'"  Peterson, 849 F.2d. at 467 (quoting Reid Burton Constr., Inc. v. Carpenters Dist. Council

of S. Colo., 614 F.2d 698, 702 (10th Cir. 1980)).  Third, there has been no trial setting in this

matter, and there is no genuine factual dispute whether Field Nation delayed for a long period

before asserting its right to arbitrate.  See Peterson, 849 F.2d. at 467.  Fourth, Field Nation has not

filed a counterclaim against DeLaCruz-Bancroft.  See Peterson, 849 F.2d. at 467-68.  Fifth, by

removing the case to federal court, Field Nation has not waived its right to arbitrate.  See Peterson,

849 F.2d. at 468; Hudson v. Peak Med. New Mexico No. 3 LLC, CIV. No. 21-1126, 2022 WL

2904378, at *2 (D.N.M. July 22, 2022)(Strickland, J.).  Sixth, as for the overarching consideration

the Peterson factors identify -- i.e., whether the party seeking arbitration improperly manipulated

the judicial process, see BOSC, Inc., 853 F.3d at 1174 -- DeLaCruz-Bancroft's response to the

motion to compel arbitration fails to show a genuine factual dispute whether Field Nation has tried

to manipulate the judicial process to its advantage by delaying the assertion of its right to arbitrate.

To the contrary, it is undisputed that Field Nation asserted its right to arbitrate early in this litigation

and since then has acted in a manner consistent with that right.  See, e.g., Cornoyer v. AT&T

Mobility Servs., LLC, CIV. No. 15-474, 2016 WL 6404853, at *13 (D.N.M. October 5,

2016)(Browning, J.)(concluding that there was no waiver of right to arbitrate despite a 213-day

delay in moving to compel arbitration and concluding that "no party is blatantly manipulating the

litigation machinery").

      Finally, DeLaCruz-Bancroft raises several arguments for the first time in his Objections.

Despite that that "[i]ssues raised for the first time in objections to the magistrate judge's

recommendation are deemed waived," <u>Marshall v. Chater</u>, 75 F.3d at 1426, the Court will briefly address these issues in the "interests of justice . . . ,'" <u>One Parcel</u>, 73 F.3d at 1060. First, DeLaCruz-Bancroft argues that Field Nation violated the Terms and Conditions Agreement by failing to provide DeLaCruz-Bancroft with notice that it intended to arbitrate. <u>See</u> Objections at 19. This issue of whether arbitration procedures have been followed, however, is one of "[p]rocedural arbitrability," <u>John Wiley & Sons, Inc. v. Livingston</u>, 376 U.S. 543, 557 (1964), which are "to be determined by the arbitrator," <u>Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW) v. Folding Carrier Corp.</u>, 422 F.2d 47, 49 (10th Cir. 1970). <u>See Raceway Park, Inc. v. Loc. 47, Serv. Emps. Int'l Union</u>, 167 F.3d 953, 962 (6th Cir. 1999)("[T]he issue of whether a union's alleged failure timely to satisfy the notice requirement of its intent to arbitrate is one of procedural arbitrability."). Second, DeLaCruz-Bancroft argues that the arbitration agreement is "stale, void, and unenforceable," because the Terms and Conditions Agreement included language notifying DeLaCruz-Bancroft that the agreement was for sixty days and that his "continued use" would "continuously renew[]" the agreement for "additional" sixty-day terms. <u>See</u> Objections at 17 (quoting Terms and Conditions Agreement at 14). This language raises a concern that DeLaCruz-Bancroft would not have notice of subsequent changes to the Terms and Conditions Agreement, and, consequentially, that those contractual changes would not be enforceable against him. <u>See</u>, <u>e.g.</u>, <u>Stover v. Experian Holdings, Inc.</u>, 978 F.3d 1082, 1085-86 (9th Cir. 2020)(holding that "a single website visit four years after assent to a contract containing a change-of-terms provision" is insufficient "to bind the parties to terms in the then-current version of the contract of which the visitor is unaware"). DeLaCruz-Bancroft, however, has not alleged that the Terms and Conditions Agreement that he assented to were later changed in any way. Moreover, the Terms and Conditions Agreement makes clear that Field Nation "reserve[s] the

right to change the Provider Terms at any time," "[e]xcept as provided in the "Arbitration Agreement and Class Waiver" in Section 17."  Terms and Conditions Agreement at 14.  The referenced language in the arbitration agreement provides that the "arbitration agreement may not be modified or terminated absent a writing signed (electronically or otherwise) by both Provider and an authorized representative of Field Nation."  Terms and Conditions Agreement at 14.  Accordingly, DeLaCruz-Bancroft does not to meet his burden to show a genuine issue of material fact on the issue of waiver.

The Court has conducted a de novo review of the record, the PFRD, and DeLaCruz-Bancroft's Objections pursuant to rule 72(b).  After conducting this de novo review, and having thoroughly considered the PFRD and the Objections thereto, the Court concludes that there is no reason either in law or in fact to depart from Magistrate Judge Khalsa's PFRD.  DeLaCruz-Bancroft has not identified any genuine issue of material fact that requires a trial on the applicability or enforceability of the arbitration agreement in the Terms and Conditions Agreement, or his failure or refusal to arbitrate his claims against Field Nation.  See BOSC, Inc., 853 F.3d at 1177.  In the PFRD, Magistrate Judge Khalsa recommends, therefore, that the Court compel arbitration of these claims in accordance with the agreement.  Furthermore, Magistrate Judge Khalsa recommends that the Court grant Field Nation's request to dismiss these claims, because no party has asked for a stay and DeLaCruz-Bancroft's claims against Field Nation fall within the scope of the parties' valid and enforceable arbitration agreement.  See Armijo v. Prudential Ins. Co. of Am., 72 F.3d 793, 797 (10th Cir. 1995); World Fuel Servs., Inc. v. Nambe Pueblo Dev. Corp., 362 F. Supp. 3d 1021, 1069 (D.N.M. 2019)(Browning, J); Hunt v. Jack V. Waters, D.C., P.C., 403 F. Supp. 3d 1036, 1063 (D.N.M. 2019)(Browning, J.).

**IT IS ORDERED** that: (i) the Objections in the Plaintiff's Response to Magistrate Judge's

Proposed Findings and Recommended Disposition, filed March 25, 2023 (Doc. 47), are overruled; (ii) the Magistrate Judge's Proposed Findings and Recommended Disposition, filed March 11, 2024 (Doc. 46), is adopted; (iii) the Complaint for Breach of Contract and Failure to Perform, Breach of Good Faith and Fair Dealing, Negligent and/or Intentional Misrepresentation, and Unfair Trade Practices, filed January 9, 2023 (Doc. 9), is dismissed; (iv) Defendant Field Nation, LLC's Motion to Compel Arbitration and to Dismiss Plaintiff's Complaint, filed March 24, 2023 (Doc. 23), is granted; and (v) the Plaintiff and Field Nation are directed to arbitrate all claims asserted against Field Nation.

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel*:

Howard DeLaCruz-Bancroft
Albuquerque, New Mexico

   *Plaintiff pro se*

Jay J. Athey
Littler Mendelson
Albuquerque, New Mexico

-- and --

Robert S. Oller
Littler Mendelson
Phoenix, Arizona

   *Attorneys for Defendant Field Nation, LLC*

Alexander G. Elborn
Andrew J. Simons
Sutin, Thayer & Browne
Albuquerque, New Mexico

*Attorneys for Defendant Spartan Computer Services/National Service Center*

Christopher R. Jones
Jaime L. Wiesenfeld
Gordon & Rees Scully Mansukhani, LLP
Denver, Colorado

*Attorneys for Defendant Jack In The Box Inc.*