**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

HOWARD DELACRUZ-BANCROFT,

     Plaintiff,

v.                                                                                          Civ. No. 23-0023 JB/KK

FIELD NATION, LLC, *et al.,*

     Defendants.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS**
**AND RECOMMENDED DISPOSITION[1]**

BEFORE the Court are (1) Defendant Jack in the Box, Inc.'s ("JITB's") Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim (Doc. 1-1 at 31) ("JITB Motion to Dismiss"), and (2) NewBold Corporation's Motion to Dismiss the Complaint against the National Service Center[2] ("NSC") (Doc. 1-1 at 25) ("NSC Motion to Dismiss"). Having reviewed the parties' submissions, the record, and the relevant law, and being otherwise sufficiently advised, I recommend the Court GRANT JITB's Motion to Dismiss, GRANT the NSC's Motion to Dismiss, and DISMISS Plaintiff's claims against JITB and the NSC.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed this action in the Second Judicial District Court for the County of Bernalillo, State of New Mexico, on November 14, 2022. (Doc. 1-1 at 3.) In his Complaint, Plaintiff asserts claims for breach of contract, breach of the duty of good faith and fair dealing, intentional and/or negligent misrepresentation, and violations of the New Mexico Unfair Practices Act ("NMUPA")

---

[1] By an Order of Reference entered on February 22, 2023, United States District Judge James O. Browning referred this case to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. (Doc. 20.)

[2] The NSC is a division of NewBold Corporation. (Docs. 6, 1-1 at 25.)

against Defendants Field Nation, LLC ("Field Nation"), "Spartan Computer Service/National Service Center AKA SCS/NSC,"[3] and JITB. (*Id.* at 3–15); *See* N.M. Stat. Ann. §§ 57-12-1 to -26 (2003). In support of his claims, Plaintiff alleges that he used Field Nation's internet "work platform" to obtain information technology ("IT") jobs from businesses posting job opportunities on the platform; however, on November 11, 2018, he provided services to a JITB franchisee (the "Dancel Franchise") in Albuquerque without going through the Field Nation's work platform and Field Nation permanently banned him from the platform, "meaning that no more IT jobs would be available to Plaintiff" through it. (*Id.* at 4–8.) Plaintiff further alleges that Field Nation banned him from its platform on November 14, 2018, because employees of "SCS/NSC" and JITB informed Field Nation "that [he] had violated Field Nation's agreement to not work off the platform" even though he "had worked with SCS/NSC off and separate from the Field Nation platform at the request of SCS/NSC for many years prior . . . ."[4] (*Id.* at 7–8.) He adds that Field Nation "did not

---

[3] Plaintiff named "Spartan Computer Service/National Service Center" ("SCS/NSC") as a defendant and refers to SCS/NSC through his Complaint as a single entity. (Doc. 1-1 at 1.) Plaintiff certified that he mailed the summons and Complaint to "Spartan Computer Services/National Service Center aka SCS/NSC care of: NewBold Corporation and Stonewood Capital Management Inc." (Doc. 1-1 at 15.) However, counsel for NewBold Corporation entered an appearance on behalf of the NSC (a division of NewBold Corporation), (Doc. 6), and suggested that SCS is a separate entity. (Docs. 1-1 at 25 (stating that Plaintiff named four defendants: Field Nation, JITB, the NSC, and SCS); *see also* Doc. 41 at 1.) Nevertheless, Plaintiff continues to refer to "SCS/NSC" as a single entity. (Doc. 39.) Thus, it appears that Plaintiff intended to sue only NSC. However, to the extent that he intended to pursue claims against SCS, because Plaintiff has not timely served this Defendant, the Court has issued an Order to Show Cause why his claims against SCS should not be dismissed.

[4] As noted in the Court's Memorandum Opinion and Order dated March 29, 2024, the contract governing Plaintiff's and Field Nation's business relationship provides that Plaintiff (referred to as "Provider") "shall do all work" for businesses posting jobs on Field Nation's platform (referred to as "Buyers") "directly through the Platform only (or Private Network, as applicable), and shall not communicate with any Buyers, or Buyers' clients, outside of the Platform for the purpose of avoiding any obligations under these Provider Terms, including the obligation to pay the Field Nation Fee. For the term of these Provider Terms and one year thereafter, Provider shall not directly or indirectly: (a) solicit or accept employment or contract services from any Field Nation Buyer or Buyer's clients about whom Provider learned from the Buyer or through the Platform, except for services to be performed pursuant to Work Orders via the Platform without the written consent of Field Nation; or (b) take any action which interferes with the relationship between Field Nation and any of its Buyers or Buyers' clients." (*See* Doc. 23-2 at 9-10.)

consider or respond to [his] explanation that SCS/NSC was the one who initiated work off the platform" and "denied [him] any appeal process." (*Id.* at 8–9.)

On December 14 and 20, 2022, respectively, JITB and NewBold Corporation filed Motions to Dismiss in state court. (Docs. 1, 1-1 at 25, 31.) JITB argues that this Court lacks personal jurisdiction over it and that Plaintiff has not stated a claim against it because there is no contract between Plaintiff and JITB, his tort claims are untimely, and Plaintiff does not have standing to bring an NMUPA claim. (Doc. 1-1 at 32, 34); *See* Fed. R. Civ. P 12(b)(6). The NSC argues that Plaintiff has failed to state claims against it as well. (Doc. 1-1 at 25.)

On January 9, 2023, Field Nation removed the case to this Court and caused notice of the removal to be served on Plaintiff. (Doc. 1; Doc. 1-2 at 2, 3.)[5] On January 10, 2023, Plaintiff filed a motion in state court titled "Motion to Strike, Consideration for Motion to Amend as Response to Motion to Dismiss and Objection for Removal to Federal Court and Request for Hearing" (the "State Court Response"). *See Delacruz-Bancroft v. Field Nation, LLC, et al.*, Case No. D-202-CV-2022-06858; (Docs. 24 at 1, 39 at 3.) Plaintiff asserts that he responded to JITB's and the NSC's motions to dismiss in that filing. (Docs. 24 at 1, 39 at 3.) On January 26, 2023, the Court found good cause to delay entering a scheduling order pending resolution of the motions to dismiss. (Doc. 13 at 1.) About two months later, on March 24, 2023, Field Nation filed a motion asking the Court to compel Plaintiff to arbitrate Plaintiff's claims against Field Nation and to dismiss Field Nation from this action. (Doc. 23.)

On April 11, 2023, Plaintiff filed a "Request for Clerk to Update Federal Docketing Statement with Pleadings from State District Court to Include Plaintiff's Response to Defendant

---

[5] Pursuant to this Court's order, Field Nation timely filed an amended notice of removal to correct deficiencies in the original notice on January 20, 2023. (Docs. 10, 11.)

Spartan Computer Services/National Service Center SCS/NSC AKA NewBold's Motion to Dismiss" ("Request to Update Docket"). (Doc. 24.) Plaintiff asked that the Clerk "update the federal docketing statement with pleadings from the state district court in this instant case to include Plaintiff's response to Defendant SCS/NSC Spartan Computer Services, National Service Center aka New Bold's Motion to Dismiss as part of the federal court record." (*Id.* at 2.)

On April 13, 2023, Plaintiff filed a "Request for Clerk's Entry of Default" in which he argued that the Court should enter a default because Field Nation, SCS/NSC, and JITB were served with summonses and copies of the complaint on November 14, 2022, but failed to file responsive pleadings within thirty days as required by New Mexico Rule of Civil Procedure 1-004. (Doc. 25 at 1–2.) As discussed further below, the Court denied the request for entry of default on April 18, 2023, because "the record does not contain proofs of service that include the dates of delivery by the post office and copies of Defendants' signature receipts, nor does it otherwise reflect that persons authorized to accept service of process on Defendants' behalf signed receipts for these mailings." (Doc. 26 at 2 (citing Doc. 1-1 at 16–24.) "Thus, there is no indication in the record that service of process on Defendants was completed on November 14, 2022." (Doc. 26 at 2.)

On April 27, 2023, JITB and NewBold Corporation filed Notices of Completion of Briefing indicating that Plaintiff had not filed a response to their motions to dismiss, either in state court before removal or in this Court afterward. (Docs. 27 at 1-2; 30 at 1.) On the same date, Field Nation filed a reply in support of its Motion to Compel Arbitration indicating that Plaintiff had neither responded to the motion nor sought an extension of time in which to do so. (Doc. 28 at 1-2.)

Approximately nine months later, on January 19, 2024, the Court denied Plaintiff's Request to Update Docket because in general, "documents filed in state court after removal are legal nullities" and "have no bearing on any part of the removed action." (Doc. 31 (quoting *Alexander*

4

*v. Kirkpatrick*, Civ. No. 19-509 JB/SMV, 2019 WL 4164882, at *2 (D.N.M. Sept. 3, 2019), *report and recommendation adopted*, 426 F. Supp. 3d 1005 (D.N.M. 2019)). In its Order, the Court noted that "Plaintiff plainly received notice of removal of his case to this Court before he filed his [State Court Response] in state court, and he has failed to offer any reason why he could not have filed [it] in this Court." (Doc. 31 at 2.) The Court also issued an Order to Show Cause requiring Plaintiff to show cause why the Court should not grant the motions to dismiss and Field Nation's motion to compel arbitration because he had failed to timely respond to them. (Doc. 32 at 3.) In his show-cause response, Plaintiff asked for an extension of time in which to respond to the motions. (Doc. 33.) After expedited briefing, the Court granted this request. (Doc. 38.) In its Order, "[t]o ensure that Plaintiff does not suffer from any lingering confusion," the Court advised him "that it will ***not*** consider any pleadings filed in state court after removal when it rules on Defendants' motions. Rather, Plaintiff must file his responses to the motions ***in this Court*** if he wants the Court to consider them." (*Id*. at 3 (emphasis in original).)

Plaintiff timely filed a single response addressing the three motions on February 16, 2024. (Doc. 39.) In his Response, Plaintiff did not adduce evidence showing that the Court has personal jurisdiction over JITB and did not substantively address JITB's or the NSC's Rule 12(b)(6) arguments. (Doc. 39.) Although he states that he "timely amend[ed] his complaint . . . as an answer to" JITB's motion to dismiss (Doc. 39 at 3), Plaintiff did not file a motion to amend the Complaint in this Court. Therefore, the Complaint filed on November 14, 2022, is the operative complaint. (Doc. 1-1 at 3.) Defendants filed replies addressing Plaintiff's Response. (Docs. 40, 41, 42.) The Court granted Field Nation's Motion to Compel Arbitration on March 29, 2024, and dismissed Plaintiff's claims against Field Nation. *Bancroft v. Field Nation, LLC*, No. CV 23-23 JB/KK, 2024 WL 1051237, at *6 (D.N.M. Mar. 11, 2024) *report and recommendation adopted sub nom.*

*DeLaCruz-Bancroft v. Field Nation, LLC*, No. CIV 23-0023 JB/KK, 2024 WL 1382829 (D.N.M. Mar. 29, 2024) ("*DeLaCruz-Bancroft I*").

## III.  ANALYSIS

The issues before the Court are whether: (A) JITB's Motion to Dismiss was untimely, (Doc. 39 at 2), (B) Plaintiff has shown the Court has personal jurisdiction over JITB, (Doc. 1-1 at 32) and (C) Plaintiff has stated claims against JITB and the NSC under Federal Rule of Civil Procedure 12(b)(6). *See* (Doc. 1-1 at 25, 34.)

### A.  Timeliness of JITB's Motion to Dismiss

Plaintiff argues, as he did in his "Request for Clerk's Entry of Default," that the Court should find JITB "in default" because JITB did not file its Motion to Dismiss within thirty days after the Complaint was served on it. (Docs. 25, 39 at 2, 12.) Plaintiff relies on N.M. R. Civ. P. 1-012(a)(1), which requires defendants to file an "answer" within thirty days "after the service of the summons and complaint upon" them. The Court has already rejected this argument because the record does not support it. (Doc. 26.) The record shows that Plaintiff mailed summonses and a copy of the complaint to JITB and NewBold Corporation's registered agent on November 14, 2022. (Doc. 1-1 at 15–24.) However, in state court civil actions, service by mail is only complete when a person authorized to accept service on a defendant's behalf "signs a receipt" for the mailing. N.M. R. Civ. P. 1-004(E)(3), (G)(3). And here, as the Court observed in its Order Denying Plaintiff's Request for Clerk's Entry of Default, filed on April 18, 2023,

> the record does not contain proofs of service that include the dates of delivery by the post office and copies of Defendants' signature receipts, nor does it otherwise reflect that persons authorized to accept service of process on Defendants' behalf signed receipts for these mailings. Thus, there is no indication in the record that service of process on Defendants was completed on November 14, 2022,

and that their responsive pleadings were therefore due by December 14, 2022. (Doc. 26 at 2 (footnote and citation omitted)); *see DeLaCruz-Bancroft I* at *6. The Court also noted that "Defendants cannot have received the mailings on November 14, 2022, because the summonses were not issued until November 14, 2022." (Docs. 26 at 2; 1-1 at 16-24.)

Although he filed his Response over nine months after the Court's Order Denying Plaintiff's Request for Clerk's Entry of Default, Plaintiff did not address the Court's reasoning or the effect of N.M. R. Civ. P. 1-004(E)(3), (G)(3). Hence, he has not shown that JITB's Motion to Dismiss was untimely as a matter of fact.

Even if JITB's Motion to Dismiss was filed outside of the deadline for its answer to the Complaint, Plaintiff has not shown that JITB waived its personal jurisdiction defense. *See* N. M. R. Civ. P. 1-012(H) (lack of personal jurisdiction is a waivable defense); Fed. R. Civ. P 12(h) (same); *see also* (Doc. 39 at 13.) Plaintiff's premise is that Rule 1-012(a)(1) fixes a deadline for motions to dismiss as well as answers to a complaint. But the plain language of Rule 1-012(a)(1) does not address motions and Plaintiff cites no New Mexico cases in support of his reading of the rule. (Doc. 39.) To the contrary, federal courts[6] construing the counterpart federal rule have held that Rule 12(a)(1) does *not* fix a deadline for motions to dismiss for lack of personal jurisdiction. *See Christenson Media Grp., Inc. v. Lang Indus., Inc.*, No. 10-2505-JTM, 2011 WL 2551744, at *2 (D. Kan. June 27, 2011) (collecting cases holding that "the time limits in 12(a) do not govern waiver of 12(b) motions under 12(h)(1)"); *Taylor v. State of Kansas*, No. 87-1521-C, 1988 WL 507620, at *2 (D. Kan. Oct. 26, 1988) ("Fed. R. Civ. P. 12(a) does not state that a defendant shall

---

[6] New Mexico courts find "federal authority interpreting" Federal Rule of Civil Procedure 12 "instructive" because "the language of Rule 1–012 closely parallels" its federal counterpart. *Doe v. Roman Cath. Diocese of Boise, Inc.*, 1996-NMCA-057, ¶ 5, 918 P.2d 17; *see, e.g., Rupp v. Hurley*, 1999-NMCA-057, ¶ 19, 979 P.2d 733 (relying on construction of Rule 12(h) to construe Rule 1-012(H)).

serve an answer *or respond by motion* within 20 days, only that the defendant shall serve an answer within 20 days."); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1391 (3d ed.2004) (stating that Rule 12(h) "does not call for the assertion of the [personal jurisdiction] defense within the time provided in Rule 12(a) for serving a responsive pleading; it merely dictates waiver if the defense is not made by motion or included in the responsive pleading, presumably whenever it may happen to be served"). Similarly, "the defense of failure to state a claim . . . may be raised during the pendency of the action including at trial on the merits." *Sundance Mech. & Util. Corp. v. Atlas*, 1990-NMSC-031, ¶ 25, 789 P.2d 1250; N.M. R. Civ. P. 1–012(H)(2).

In short, I find JITB's Motion to Dismiss was not untimely and that JITB has not waived its defenses of lack of personal jurisdiction or failure to state a claim.

### B. Personal Jurisdiction over JITB

If a defendant moves for dismissal of claims against it for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), courts must decide whether the plaintiff has established personal jurisdiction over that defendant for each claim against it before ruling on the merits of the case. *See OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998); *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984) ("The plaintiff bears the burden of establishing personal jurisdiction over the defendant."); *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020) (stating the plaintiff "must make this showing with respect to each of the claims alleged"). Before trial, the "plaintiff need only make a prima facie showing" that the Court has personal jurisdiction over the defendants, which can be done by "demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc.*, 149 F.3d at 1091.

In addition, the Court takes as true the allegations in the complaint "to the extent they are uncontroverted by the defendant's affidavits." *Behagen*, 744 F.2d at 733. "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.*; *OMI Holdings*, 149 F.3d at 1091. Here, Plaintiff did not address JITB's personal jurisdiction arguments in his Response or provide affidavits or other materials addressing jurisdiction. The Court therefore examines the allegations in the Complaint to determine whether, if true, those facts suffice to make a prima facie showing of personal jurisdiction over JITB. *Behagen*, 744 F.2d at 733.

Determining whether the Court has personal jurisdiction involves two questions, the first of which is "whether any applicable statute authorizes the service of process on defendants." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). In cases like this one not involving a federal statute conferring personal jurisdiction over the defendants, courts "apply the law of the state in which the district court sits." *Id*. The second question is "whether the exercise of such statutory jurisdiction comports with constitutional due process demands." *Id.* Those "demands" protect "an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts ties, or relations.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–472 (1985) (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 319 (1945)). Therefore, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291 (1979). If the defendant has the requisite minimum contacts with the forum state, courts then determine whether exercising personal

jurisdiction over a defendant offends "traditional notions of fair play and substantial justice" by considering the burden on the defendant, the interests of the plaintiff and the forum state, judicial efficiency, and "the shared interest of the several states or foreign nations in furthering fundamental social policies. *OMI Holdings, Inc.*, 149 F.3d at 1095. Under this analysis, a defendant's contacts with a state may give rise to either "general" (all-purpose) or "specific" (case-related) personal jurisdiction. *Dudnikov*, 514 F.3d at 1078; *OMI Holdings, Inc.*, 149 F.3d at 1091.

The state law applicable here is New Mexico's "long-arm" statute. N.M. Stat. Ann. § 38-1-16 (1971). Because that statute "extends the jurisdictional reach of [courts in New Mexico] as far as constitutionally permissible," the Court focuses only on the second question—whether [JITB has] the minimum contacts with New Mexico such that subjecting [it] to suit here is consistent with [its] due process rights. *Tercero v. Roman Catholic Diocese*, 2002-NMSC-018, ¶ 6, 48 P.3d 50; *see Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010) (where a long-arm statute is coextensive with due process, courts "need not conduct a statutory analysis apart from the due process analysis").

**1. General Jurisdiction**

"General" jurisdiction may be exercised when the defendant has "affiliations with the State [that] are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A corporation's state of incorporation and principal place of business are paradigmatic bases for finding a corporation at "home." *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 924 (2011); *Daimler AG*, 571 U.S. at 139. Only in "exceptional' cases will general jurisdiction be available anywhere else. *Daimler AG*, 571 U.S. at 139 n.19. Determining whether it has general jurisdiction requires a court to "appraise . . . a

corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at n.20. Accordingly, a contractual relationship between a nationwide franchisor and in-forum franchisee, standing alone, does not render the franchisor "at home" in the franchisee's state. *Id.* (stating that "at home" is not "synonymous with 'doing business'"); *see, e.g.*, *Pestmaster Franchise Network, Inc. v. Mata*, No. 16-CV-07268-EMC, 2017 WL 1956927, at *3 (N.D. Cal. May 11, 2017) (finding a franchisor was not "at home" in the forum state where the franchisor had 44 franchisees nationwide and three in the forum state). To assess whether a defendant's contacts are "continuous and systematic," so as to render it at home in the forum, courts consider "(1) whether the corporation solicits business in the state through a local office or agents" or regularly "sends agents into the state to solicit business," whether the corporation "holds itself out as doing business in the forum," such as by advertising or bank accounts, and the "volume of business conducted in the state . . . ." *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996) (holding that the plaintiff had not established general jurisdiction where he did not allege facts related to these factors).

Plaintiff neither alleges nor provides evidence of JITB's contacts with New Mexico that support general jurisdiction. *See id.* (holding that the plaintiff had not established general jurisdiction where he did not allege facts related to the enumerated factors). Plaintiff certified that he served JITB through its registered agent in Delaware (Doc. 1-1 at 15), listed a Delaware address for JITB, and alleges that "JITB Corporate" is located in San Diego. (*Id.* at 6, 19.) Rather than demonstrate JITB is "at home" in New Mexico, these allegations suggest that JITB is incorporated and has its principal place of business in Delaware or California, not in New Mexico. Moreover, the fact that JITB is a franchisor with at least one franchisee in New Mexico, without more, does

not establish that JITB is "at home" in New Mexico. *Cf. Duran v. Domino's Pizza, LLC*, No. CV 08-0962 WPL/RHS, 2008 WL 11411185, at *4 (D.N.M. Dec. 29, 2008) (finding general jurisdiction over a franchisor where the plaintiff showed the defendant advertised, solicited franchises, had a registered agent, and contracted with at least 13 locations in Bernalillo County). "[B]ecause general jurisdiction is not related to the events giving rise to the suit," Plaintiff must meet a "more stringent minimum contacts test" that requires him to "demonstrate the defendant's continuous and systematic general business contacts" with New Mexico. *OMI Holdings, Inc.,* 149 F.3d at 1091 (quoting *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 567 (2d Cir.1996)). Plaintiff has not met this heavy burden. I therefore find that the Court does not have general jurisdiction over JITB.

### 2. Specific Jurisdiction

In contrast to general jurisdiction, "[s]pecific jurisdiction . . . is premised on something of a *quid pro quo*: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Dudnikov*, 514 F.3d at 1078. To show that a court has specific jurisdiction over each claim, a plaintiff must show first, that the defendant "'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries . . . 'arise out of'" those purposefully directed activities. *Id.* at 1071.

a.  **Plaintiff's Claims Sounding in Tort**[7]

*Purposeful Direction*

In the context of alleged torts, the purposeful direction prong "has three elements: (1) an intentional action; (2) expressly aimed at the forum state; and (3) with knowledge that the brunt of the injury would be felt in the forum state." *Dental Dynamics, LLC*, 946 F.3d at 1231. The heart of this three-part test—known as the *Calder* "Effects Test"—is whether the defendant "expressly aimed at" the forum state. *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 966 (2022) (citing *Calder v. Jones*, 465 U.S. 783 (1984)). The Effects Test examines the defendant's intentions, i.e., "where was the 'focal point' of its purposive efforts." *Dudnikov*, 514 F.3d at 1075. Personal jurisdiction over alleged tortfeasors does not exist merely because they acted *knowing* that a plaintiff resides in a certain state; instead, the defendants must have intended their conduct to have an effect in the forum state. *Eighteen Seventy, LP*, 32 F.4th at 969; *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 907 (10th Cir. 2017) ("Purposeful direction may also be established—even in the absence of continuing relationships or market exploitation—when an out-of-state defendant's *intentional* conduct targets and has substantial harmful effects in the forum state.")

In *Calder*, for example, the Court found the defendant purposefully directed its conduct at California because the plaintiff alleged "(a) an intentional action (writing, editing, and publishing

---

[7] In his fourth claim, Plaintiff alleges violations of the NMUPA. The "gravamen of an unfair trade practice is a misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services." *Diversey Corp. v. Chem–Source Corp.*, 1998–NMCA–112, ¶ 17, 965 P.2d 332. A contract is not an essential element of an NMUPA claim. *Stevenson v. Louis Dreyfus Corp.*, 1991-NMSC-051, ¶ 13, 811 P.2d 1308 (setting forth elements of NMUPA claims). Based on these principles, courts in this district have found that NMUPA claims are akin to tort claims. *See, e.g.*, *CEI Enterprises, Inc. v. Pro. Coating Techs., Inc.*, No. 1:21-CV-01212-MLG-LF, 2023 WL 8112695, at *4 (D.N.M. Nov. 22, 2023); *Carl Kelley Constr. L.L.C. v. Danco Techs.*, 656 F. Supp. 2d 1323, 1339 (D.N.M. 2009) (stating that an NMUPA claim "is more like a tort claim than a contract claim"); *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 749 F. Supp. 2d 1235, 1276 (D.N.M. 2010). Given Plaintiff's allegations that a JITB employee "willfully" made false representations in "connection with the delivery of services and goods" with intent to cause "harm, injury and damage to" Plaintiff, I conclude his NMUPA claim is akin to a tort claim for purposes of the specific jurisdiction analysis. (Doc. 1-1 at 13.)

[an] article), that was (b) expressly aimed at" California where the "article was about a California resident and her activities in California" and "was drawn from California sources and widely distributed in that state," and (c) that the defendant knew "the brunt of the injury would be felt in" California because they "knew [the plaintiff] was in California and her career revolved around the entertainment industry there[]." *Dudnikov*, 514 F.3d at 1072 (summarizing *Calder*); *Calder*, 465 U.S. at 789–790.

The Tenth Circuit applied Calder in *Dudnikov*. 514 F.3d at 1068. The *Dudnikov* plaintiffs had a business selling fabrics through eBay from their home in Colorado. *Id*. They alleged that, under an eBay program called "Verified Rights Owner (VeRo)," eBay "will automatically terminate an ongoing auction when it receives a notice of claimed infringement ("NOCI") from a VeRO member stating, under penalty of perjury, that it has a good-faith belief that an item up for auction infringes its copyright." *Id.* The plaintiffs further alleged that the defendants, knowing of the VeRO program, intentionally sent a NOCI to eBay in California "with the intent of terminating plaintiffs' auction—thereby causing them lost business and a damaged business reputation" in Colorado. *Id*. at 1073. The Tenth Circuit held that, like in *Calder*, the complaint alleged "facts detailing what defendants did (sending the NOCI), what they knew would happen when they sent the NOCI (the cancellation of plaintiffs' auction and its ramifications for plaintiffs' business), and the basis for that knowledge (the specifics of the VeRO program and defendants' participation in that program)." *Id*. The Court further held that these facts, if true, established that the defendants' "express aim in acting was to halt a Colorado-based sale by a Colorado resident . . . . " *Id.* at 1076; *see id*. at 1075 (stating that the defendants' actions were "something like a bank shot in basketball" during which a "player who shoots the ball off of the backboard intends to hit the backboard, but he does so in the service of his further intention of putting the ball into the basket"). It concluded

that the "purposefully directed" prong of the minimum contacts test was satisfied because the plaintiffs alleged that the defendants had intentionally acted, expressly aimed their actions at the forum state, and knew the brunt of their actions would be felt in the forum state. *Id*. at 1077–1078; *see Old Republic Ins. Co.*, 877 F.3d at 908 (stating that the *Dudnikov* court "found purposeful direction because the defendants had intentionally caused harm to the plaintiffs' business in the forum state").

Here, Plaintiff alleges that he contacted JITB corporate offices several times in his attempts to assist the Dancel Franchise, which is located in New Mexico, with its technical issues. (Doc. 1-1 at 7.) He further alleged that a JITB employee, together with the NSC employees, notified Field Nation that Plaintiff had "violated Field Nation's agreement to not work off the platform" knowing Plaintiff "would be permanently banned from the" platform and denied "any future possibilities f[or] work not only from SCS/NSC and [JITB] but all the other vendors that used the Field Nation platform to send [him] work orders . . . . " (Doc. 1-1 at 7–8, 12.) I find these allegations sufficient to satisfy the Effects Test. Like in *Calder* and *Dudnikov*, Plaintiff alleges facts showing that JITB intentionally acted (contacting Field Nation) knowing what would happen (Plaintiff would be barred from future work on the Field Nation platform) and the basis for that knowledge (Plaintiff's agreement with Field Nation). *See Dudnikov*, 514 F.3d at 1073; *Calder*, 465 U.S. at 789–790. These facts are sufficient to make a prima facie showing that JITB purposefully directed its activities at New Mexico.

*Arise Out Of*

The second personal jurisdiction inquiry is whether Plaintiff's "injuries 'arise out of' defendants' contacts with" New Mexico. *Dudnikov*, 514 F.3d at 1078. In a recent opinion, the Tenth Circuit stated, "We have interpreted the 'arise out of' language to require" a causal

connection between the plaintiff's claims and the defendant's contacts with the forum and, "in this context, we have used 'but-for and proximate causation tests.'" *XMISSION, L.C., a Utah company, Plaintiff - Appellant, v. PUREHEALTH RESEARCH, a Virginia business entity, Defendant - Appellee.*, ___F.4th___, 2024 WL 3216478, at *8 (10th Cir. June 28, 2024) (quoting *Dudnikov*, 514 F.3d at 1079). Although the Court observed that "there is reason to think a wholly causation-based framing of the 'arise out of or relate to' prong may be in tension with the Supreme Court's recent pronouncements on the specific-jurisdiction inquiry," it nevertheless applied the but-for and proximate causation tests in that case. *Id*. at n.13 (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021), *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017), and *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1223 (10th Cir. 2021)); *see also id*. at *9. Under the "but-for" test, "any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction." *Dudnikov*, 514 F.3d at 1078. The proximate causation "approach, by contrast, is considerably more restrictive and calls for courts to 'examine[] whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim.'" *Id*. (quoting *O'Connor v. Sandy Lane Hotel Co.,* 496 F.3d 312, 319 (3d Cir.2007)).

Plaintiff's allegations suffice under either test. Like in *Dudnikov*, JITB's alleged notification to Field Nation was the "but for" cause "of the real[-]world harm that [Plaintiff seeks] to have remedied: the cancellation of [his contract with Field Nation] and the black mark on [his] record." *Dudnikov*, 514 F.3d at 1079. Additionally, JITB's contact with New Mexico—the intentional notification of Field Nation of Plaintiff's efforts on behalf of the Dancel Franchise with knowledge that Plaintiff would be barred from the Field Nation platform—is the very conduct that allegedly injured Plaintiff. *Id*. (holding that the proximate causation test was met where the

defendant's communication to eBay was "at the very core of [the] plaintiffs' suit"). I conclude that Plaintiff's allegations are sufficient to show that JITB purposefully directed its conduct at New Mexico and that Plaintiff's alleged tort claims arise out of that conduct.

*Fair Play and Substantial Justice*

I also find that exercise of personal jurisdiction over JITB for Plaintiff's tort claims does not "offend traditional notions of fair play and substantial justice." *Dudnikov*, 514 F.3d at 1080 (quoting *Int'l Shoe Co.*, 326 U.S. at 316). This analysis assesses "(1) the burden on [JITB], (2) [New Mexico's] interest in resolving the dispute, (3) [Plaintiff's] interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *OMI Holdings, Inc.*, 149 F.3d at 1095. Because Plaintiff has alleged his claims arise out of JITB's minimum contacts with New Mexico, JITB "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. at 477; *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005). JITB has not presented a compelling case against specific jurisdiction. In its Motion to Dismiss, JITB states that exercising jurisdiction over it would offend traditional notions of fair play and substantial justice but does not address why. (Doc. 34.) Further, JITB has not presented evidence or argument demonstrating an undue burden to it resulting from exercise of jurisdiction in New Mexico and New Mexico has a strong interest in resolving this dispute, as Plaintiff is a New Mexico citizen who alleges injury in this state. *See Burger King Corp.*, 471 U.S. at 473 ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." (citation omitted)). Plaintiff is seeking compensatory damages for loss of income, among other things, and therefore

has an interest in obtaining convenient and effective relief. Finally, the interstate judicial system's interest in obtaining an efficient resolution of controversies and the shared interest of the several states in furthering fundamental social policies appear to weigh neutrally. Because JITB has not met its burden on this issue and because I find that the factors do not weigh in JITB's favor, I conclude that exercising specific personal jurisdiction over Plaintiff's tort and NMUPA claims is consistent with fair play and substantial justice.

**b.  Plaintiff's Claims Sounding in Contract[8]**

"[I]n contract cases," the purposeful direction inquiry is "whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." *Dudnikov*, 514 F.3d at 1071. As in the general jurisdiction analysis, a "contract with an out-of-state party *alone* can[not] automatically establish sufficient minimum contacts in the other party's home forum . . . . " *Burger King Corp.*, 471 U.S. at 478; *Dental Dynamics, LLC*, 946 F.3d at 1230 ("Although contractual obligations may create sufficient ties to establish jurisdiction, an out-of-state resident's contract with a resident of the forum state is insufficient, standing alone, to create personal jurisdiction."). Instead, courts must consider the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . in determining whether the defendant purposefully established minimum contacts within the forum." *Burger King Corp.*, 471 U.S. at 479. This is a fact intensive analysis. *Id.*

Viewed in the light most favorable to Plaintiff, the Complaint references contracts between (1) Plaintiff and Field Nation, (2) JITB and the Dancel Franchise, and (3) the Dancel Franchise

---

[8] As discussed in more detail below, a claim for breach of the duty of good faith and fair dealing, which generally sounds in contract law, may sound in tort law under certain circumstances. However, Plaintiff has not shown those circumstances exist here. *See* Section III.D.2.

and the NSC or Field Nation in the form of a "maintenance contract." (Doc. 1 at 6, 7.) It is not clear whether JITB, the NSC, or the Dancel Franchise also had contracts with Field Nation to use its platform to procure services by IT providers like Plaintiff. *See id*.; *see also* (Doc. 23-2 at 2). He does not allege facts showing a contract between him and JITB, nor about the negotiation of any agreements showing that JITB "contemplated future consequences" in New Mexico, about the terms of such agreements, or JITB's course of dealing with entities in New Mexico. *See Burger King Corp.*, 471 U.S. at 479; *Martin v. SGT, Inc.*, No. 2:19-CV-00289, 2020 WL 1930109, at *5 (D. Utah Apr. 21, 2020) (holding that the plaintiff had shown purposeful availment where he alleged facts about the negotiation of a license, travel into the forum state by the defendant's representative, payments by defendant to the plaintiff in the forum state, and the length of the parties' relationship). Plaintiff therefore has not shown that JITB purposefully availed itself of the benefits of transacting business in New Mexico through contractual relationships with residents. Thus, to the extent this litigation arises from alleged breaches of such contracts, Plaintiff's allegations are insufficient to support the exercise of specific personal jurisdiction. *See, e.g., Pro Polish, LLC v. Abkarian*, No. 23-CV-02470-NYW-SBP, 2024 WL 2701314, at *9–10 (D. Colo. May 24, 2024).

The analysis of these claims is not quite complete because, "once a district court has personal jurisdiction over a defendant for one claim, it may 'piggyback' onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction." *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002). If the Court dismisses the so-called "anchor claims," however, it generally must also dismiss the piggybacking claims, for they no longer have any claim on which to ride. *Id.*

As explained below, I find that Plaintiff's tort and NMUPA claims must be dismissed. Hence, even though the Court has personal jurisdiction over those claims, they cannot be anchor claims for Plaintiff's contract claims against JITB even if all the claims arise from the same facts. *Id*. I therefore recommend the Court dismiss Plaintiff's contract claims against JITB without prejudice for lack of personal jurisdiction. *See Crocs, Inc. v. Effervescent, Inc.*, No. 06-CV-00605-PAB-KMT, 2021 WL 952215, at *4 (D. Colo. Mar. 11, 2021) (stating that "a claim can only anchor pendent jurisdiction if it is a live claim in the lawsuit").

### C.  Plaintiff's Claims

Federal Rule of Civil Procedure 12(b)(6) authorizes courts to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), courts must determine whether the plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Courts must consider "the complaint as a whole, along with the documents incorporated by reference into the complaint[,]" and construe all well-pled allegations "in the light most favorable to the plaintiff." *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1146 (10th Cir. 2015). "Well-pled" means that allegations are "plausible, non-conclusory, and non-speculative . . . ." *Dudnikov*, 514 F.3d at 1070. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Indeed, courts "disregard conclusory statements and look only to whether the remaining[] factual allegations plausibly suggest the defendant is liable." *Mocek v. City of Albuquerque*, 813 F.3d 912, 921 (10th Cir. 2015) (quotation omitted).

1.   **Breach of Contract Claim (Claim 1)**

Plaintiff's first claim is titled "Breach of Contract, Failure to Perform." (Doc. 1-1 at 9.) Under New Mexico law, to prevail on such a claim, a plaintiff must show (1) the existence of a valid and binding contract and breach thereof; (2) the plaintiff's compliance with the contract and performance of the obligations under it; (3) a general averment of the performance of any conditions precedent; and (4) damages suffered resulting from defendant's breach. *McCasland v. Prather*, 1978-NMCA-098, ¶ 7, 585 P.2d 336; *see Tyler Grp. Partners, LLC v. Madera*, 564 F. Supp. 3d 944, 1002 (D.N.M. 2021).

Plaintiff alleges that Defendants had "legal obligation[s]" to (1) "respond to the Plaintiff's explanations and claims for justification for having done work separately from the Field Nation work portal," (2) "consider, respond and reinstate the Plaintiff to regular work status," (3) "treat the Plaintiff with respect, professionalism and to take into consideration the many years of compe[]tent, faithful service" and (4) "understand their actions to collude, conspire and deprive the Plaintiff of any ongoing financial dealings with each of these separately and collectively was conspiracy and collusion." (Doc. 1-1 at 9–10.) He also asserts that Defendants "did not fulfil their oblig[]ations under agreement with Plaintiff" and have, therefore, "committed a breach of contract." (*Id*. at 10.)

Plaintiff has failed to state a breach of contract claim against JITB and the NSC because he does not allege facts showing he had a contract with them setting forth the obligations he alleges were breached. In the Complaint, Plaintiff references a contract between Plaintiff and Field Nation, a "maintenance service contract" held by the Dancel Franchise,[9] and a franchise agreement

---

[9] It is not clear from the Complaint whether the parties to the "maintenance service contract" include, in addition to the Dancel Franchise, JITB, SCS, or the NSC.

between the Dancel Franchise and JITB. (Doc. 1-1 at 5, 6.) But Plaintiff does not allege a binding written contract between him and JITB or facts showing formation of an oral contract through an offer, an acceptance, consideration, and mutual assent. *Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 42, 304 P.3d 409 (setting forth the requirements for contract formation). There is no evidence that any of the agreements referenced in the Complaint obligate JITB to Plaintiff. *See* (Doc. 1-1 at 5, 6.)

As to the NSC, Plaintiff alleges facts suggesting he has had agreements with the NSC through which it "had allowed and used Plaintiff on previous occasions with their knowledge away from and off the Field Nation portal to work with the Dancel [F]ranchise." (Doc. 1-1 at 5.) But he does not allege a breach of those agreements and does not allege that he had formed a contract with the NSC to provide service to the Dancel Franchise in November 2018. *Id*.

Even viewing the Complaint in Plaintiff's favor, the only contract alleged to which Plaintiff is a party is the agreement with Field Nation.[10] (Doc. 1-1 at 7.) It does not appear that JITB or the NSC are parties to that contract. *See* (Doc. 23-2.) Moreover, the record does not show Plaintiff served a copy of any contract with JITB or the NSC with the Complaint as required under the New Mexico civil procedure rules, and he did not respond to JITB's or the NSC's assertion in their Motions to Dismiss that no such contracts exist. (Docs. 1-1 at 3–15; 1-1 at 26; 39); New Mexico Rules of Civil Procedure 1-009(I) ("When any instrument of writing on which the action or defense is founded is referred to in the pleadings, the original or a copy of the instrument shall be served with the pleading, if within the power or control of the party wishing to use the same."). Without

_____

[10] The agreement with Field Nation provides that "Providers" under that agreement are independent contractors "who use[] the Platform to offer services and to perform work on specific projects for Buyers pursuant to Work Orders posted by Buyers" and that each "Work Order constitutes a new contract between Buyer and Provider to perform work . . . . " (Doc. 23-2 at 2.) However, Plaintiff does not allege that he, as a Provider, was party to a Work Order with JITB or the NSC related to providing IT services to the Dancel Franchise.

alleging a binding contract with them, Plaintiff cannot state a claim for breach of contract against JITB or the NSC. I recommend dismissing Claim 1.

### 2. Breach of the Duty of Good Faith and Fair Dealing Claim (Claim 2)

Plaintiff alleges that Defendants breached the duty of good faith and fair dealing by "failing to competently perform on the agreement with Plaintiff, . . . [and] remedy deficiencies in performing on the agreement . . . " and "[e]ngaging in unprofessional, abusive conduct designed to intimidate Plaintiff into acquiescing to Defendants' coercive bad faith efforts to remove and stop the Plaintiff from working with the Dancel [F]ranchise and on the Field Nation work platform." (Doc. 1-1 at 10.) Although Plaintiff asserts that these "implied/duties/terms were conditions for the contractual relationship between Plaintiff and Defendants," he also asserts that Defendants' actions were "willful, wanton, malicious, reckless, and [therefore] grossly negligent so as to warrant an additional award of punitive damages . . . . " (*Id*. at 11.)

"Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement." *Watson Truck & Supply Co. v. Males*, 1990-NMSC-105, ¶ 12, 801 P.2d 639. This duty "requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement. Denying a party its rights to those benefits will breach the duty of good faith implicit in the contract." *Bourgeous v. Horizon Healthcare Corp.*, 1994-NMSC-038, ¶ 16, 872 P.2d 852. "[A] cause of action for breach of the covenant of good faith and fair dealing sounds in contract." *Young v. Hartford Cas. Ins. Co.*, 503 F. Supp. 3d 1125, 1182 (D.N.M. 2020); *see Bourgeous*, 1994-NMSC-038, ¶ 16, 872 P.2d 852. However, "tort recovery for breach of the covenant of good faith and fair dealing is permissible" in certain limited circumstances, such as "where a special relationship exists . . . . " *Young*, 503 F. Supp. 3d at 1182–83 (a special relationship existed between an insurer and its insured); *see*

*Bourgeous*, 1994-NMSC-038, ¶ 17, 872 P.2d 852; *Heimann v. Kinder-Morgan CO2 Co., L.P.*, 2006-NMCA-127, ¶ 18, 144 P.3d 111.

As discussed, Plaintiff has not alleged facts showing a contract with JITB or the NSC that expressly or implicitly includes the duty of good faith and fair dealing. Neither has he alleged facts showing a special relationship with them that would support recovery for tortious breach of the duty. Even if he had, such tort claims would be barred as untimely, as discussed below. Thus, Plaintiff has failed to plausibly state a breach of the duty of good faith and fair dealing claim sounding in contract or tort. I recommend dismissing Claim 2.

### 3.   Negligent and/or Intentional Misrepresentation Claim (Claim 3)

In his third count, Plaintiff alleges that "Defendants made false and misleading representations of fact about the Plaintiff, which were intended to be received by others, agents, or between the Defendants so as to cause undue hardship upon the Plaintiff and also cause others . . . to act in a willful, wanton, malicious, reckless and grossly vindictive and purposeful negligent manner to the detriment of the Plaintiff and his ability to conduct business as usual." (Doc. 1-1 at 12.) He also alleges that "Defendants knowingly or recklessly made false representations of fact and/or omissions of fact to and about the Plaintiff with the intent to induce reliance and act upon those misrepresentations to cause Plaintiff to be perm[an]ently banned from the Field Nation work platform . . . ." (*Id.* at 12.) As to the alleged statements to the Plaintiff, he alleges that he delayed filing suit based on the Defendants' statements that their conduct was "legal beyond the scope of any lawful remedy" and that he later learned that "the actions of the Defendant[]s were in fact unlawful . . . ." (*Id.* at 13.)

New Mexico's three-year statute of limitations bars Plaintiff's tort claims for negligent and intentional misrepresentation.[11] *See* N.M. Stat. Ann. § 37-1-8 (stating that actions "for an injury to the person or reputation of any person, [must be brought] within three years"). To determine when a claim accrues, New Mexico applies the "discovery rule." *See Gerke v. Romero*, 2010-NMCA-060, ¶ 10, 237 P.3d 111 (collecting cases). Under that rule, the limitations period begins when the plaintiff "acquires knowledge of facts, conditions, or circumstances which would cause a reasonable person to make an inquiry leading to the discovery of the concealed cause of action." *Martinez v. Showa Denko, K.K.*, 1998-NMCA-111, ¶ 24, 964 P.2d 176 (quotation marks and citation omitted). "The key consideration under the discovery rule is the factual, not the legal, basis for the cause of action. The action accrues when the plaintiff knows or should know the relevant facts, whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action." *Coslett v. Third St. Grocery*, 1994-NMCA-046, ¶ 24, 876 P.2d 656 (quoting *Allen v. State*, 118 Wash. 2d 752, 826 P.2d 200, 203 (1992)). In short, "the time period begins to run when the [plaintiff] has knowledge of sufficient facts to constitute a cause of action," regardless of whether the plaintiff knows of the full extent of injury or of the potential legal remedies. *Gerke*, 2010-NMCA-060, ¶ 10, 237 P.3d 111.

Plaintiff alleges that he learned on November 14, 2018, that he "would be banned permanently from [Field Nation's] work platform" because of JITB and the NSC employees' alleged misrepresentations about him to Field Nation. (Doc. 1-1 at 8.) This fact forms the basis for his claims. Thus, he had until November 14, 2021, to file his tort claims. However, apparently relying on New Mexico's four-year statute of limitations for contract claims, he filed the

---

[11] "A federal court sitting in diversity applies state law for statute of limitations purposes" and "state law determines when an action is commenced . . . ." *Burnham v. Humphrey Hosp. Reit Tr., Inc.*, 403 F.3d 709, 712 (10th Cir. 2005).

Complaint on November 14, 2022. (*Id*. at 4 (referencing the statute of limitation for contract claims).)

I therefore find that Plaintiff's tort claims are barred because they were filed more than three years after Plaintiff was aware of their factual basis. That Plaintiff also alleges that Defendants misled him as to whether he had legal causes of action, and that he only later learned otherwise, does not change this analysis because Plaintiff knew the factual basis of his claims on November 14, 2018. *See Coslett*, 1994-NMCA-046, ¶ 24, 876 P.2d 656 ("[N]o New Mexico decision has suggested that ignorance of the governing law tolls the limitation period."); (Doc. 1-1 at 13 (alleging that he relied on statements by Defendants that their conduct was "beyond the scope of any lawful remedy"). I recommend the Court dismiss Claim 3.[12]

### 4. New Mexico Unfair Practices Act Claim (Claim 4)

Plaintiff asserts that the Defendants violated the NMUPA by "communicat[ing] facts and ma[king] representations to the Plaintiff and other third parties . . . and between Defendants," one or more of which "were false when made . . . . " (Doc. 1-1 at 13.) Thus, Plaintiff alleges that Defendants made false statements about him to others and to him. As to the statements to him, he asserts that he "did, in fact, rely on these false statements in connection with the decision to believe that such actions by Defendants were legal beyond the scope of any lawful remedy" and that he

---

[12] Plaintiff argues in his Response that, after this matter was removed to this Court, Plaintiff filed in state court a motion to amend his complaint to add a tort claim for "Tortious Interference with a Business Relationship." (Doc. 39 at 3.) However, this Court made clear to Plaintiff that, after the date of removal, all "documents filed in state court after removal are legal nullities" and "have no bearing on any part of the removed action." (Doc. 31.) In a subsequent order, the Court advised him "that it will ***not*** consider any pleadings filed in state court after removal when it rules on Defendants' motions. Rather, Plaintiff must file his responses to the motions ***in this Court*** if he wants the Court to consider them." (Doc. 38 at 3.) Plaintiff never filed a motion to amend the complaint in this Court to add that claim. Moreover, even if the Court were to permit Plaintiff to amend his complaint to assert such a claim, such amendment would be futile because that claim would also be barred by the statute of limitations. *See Printron, Inc. v. McGraw-Hill, Inc.*, 35 F. Supp. 2d 1325, 1327 (D.N.M. 1998) (holding that New Mexico's three-year limitation period applies to tort claims for interference with existing and prospective contract relations).

later learned that "the actions of the Defendant[]s were in fact unlawful . . . . " (*Id*.) Plaintiff contends that he suffered damages and was delayed in bringing his suit because of Defendants' false statements to him. (*Id*. at 13–14.)

A claim under the NMUPA has four elements: the defendant (1) made a "false or misleading" representation (2) "in connection with the sale, lease, rental or loan of goods or services" (3) that occurred in the regular course of trade or commerce, and (4) was of the type that "may, tends to or does, deceive or mislead any person." *Stevenson v. Louis Dreyfus Corp.,* 1991-NMSC-051, ¶ 13, 811 P.2d 1308 (quotation marks and citation omitted). The NMUPA is a remedial consumer protection statute. *Gandydancer, LLC v. Rock House CGM, LLC*, 2019-NMSC-021, ¶ 24, 453 P.3d 434. "Consistent with its purpose as consumer protection legislation, . . . the UPA gives standing only to buyers of goods or services." *Santa Fe Custom Shutters & Doors, Inc. v. Home Depot U.S.A., Inc.*, 2005-NMCA-051, ¶ 17, 113 P.3d 347; *see Gandydancer*, 2019-NMSC-021, ¶¶ 29–36, 453 P.3d 434 (discussing cases construing the NMUPA).

Here, Plaintiff alleges that he was a *provider* of IT services to the Dancel Franchise and other businesses, not a consumer. *See* (Docs. 1-1 at 7 (stating that Plaintiff was the "preferred vendor for any IT service calls in the greater Albuquerque area . . . . "); *cf*. Doc. 23-2 at 2 (referring to Plaintiff as "Provider" and the businesses posting jobs on the work platform as "Buyers"). Plaintiff has not shown that, in relation to JITB and the NSC, he was a consumer of goods or services. Hence, Plaintiff does not have standing to assert a claim against JITB and the NSC under the NMUPA. *See Hicks v. Eller*, 2012-NMCA-061, ¶ 20, 280 P.3d 304 (only buyers of goods or services have standing to bring NMUPA claims). I recommend dismissing Claim 4.

27

**D. Type of Dismissal**

"Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999); *see Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). Here, it would be futile to give Plaintiff an opportunity to amend his tort claims because such claims were time barred at the time he filed the Complaint in state court. In addition, although Plaintiff has had ample opportunity to seek to amend the Complaint in this Court, he has neither done so nor responded to JITB's or the NSC's assertions that they are not party to a contract with Plaintiff, suggesting there are no contracts. It would therefore be futile to grant Plaintiff leave to amend his Complaint to rectify these issues. Hence, I recommend dismissal of Plaintiff's contract and tort claims (Claims 1, 2, and 3) with prejudice. *Brereton*, 434 F.3d at 1219 ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

Although it would be similarly futile to amend Plaintiff's NMUPA claim, I recommend dismissal of this claim (Claim 4) without prejudice because the Court lacks jurisdiction to rule on its merits. *See id.* (holding that dismissal for lack of standing should be without prejudice); *Gandydancer, LLC*, 2019-NMSC-021, ¶ 7, 453 P.3d 434 (stating that statutory standing under the NMUPA is a "jurisdictional prerequisite to an action").

**IV. CONCLUSION**

I find that Plaintiff has not shown that JITB's Motion to Dismiss was untimely. I further find that Plaintiff has not met his burden to show the Court has personal jurisdiction over JITB for his contract claims and therefore recommend that the Court GRANT JITB's Motion to Dismiss

and dismiss Plaintiff's contract claims against JITB without prejudice for lack of personal jurisdiction. I find the Court has personal jurisdiction over Plaintiff's tort and NMUPA claims against JITB, but that Plaintiff has not stated claims against JITB for breach of contract or breach of the duty of good faith and fair dealing, that his tort claims are barred by the New Mexico statute of limitations, and he lacks standing to bring an NMUPA claim against JITB. Therefore, even if the Court disagrees that it lacks personal jurisdiction over JITB as to Plaintiff's contract claims, I recommend the Court GRANT the Motion to Dismiss and dismiss Claims 1, 2, and 3 against JITB with prejudice and Claim 4 against JITB without prejudice.

Furthermore, I find, for the same reasons stated above, that Plaintiff has not stated claims against the NSC and therefore recommend the Court GRANT NewBold Corporation's Motion to Dismiss and dismiss Claims 1, 2, and 3 against the NSC with prejudice and Claim 4 against the NSC without prejudice.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**